**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**DONATOS SARRAS**,

Plaintiff,

v.

Case No. 19-cv-0861 (CRC)

**U.S. DEPARTMENT OF JUSTICE**,

Defendant.

**MEMORANDUM OPINION AND ORDER**

Federal inmate Donatos Sarras filed this *pro se* action pursuant to the Freedom of

Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act ("PA"), 5 U.S.C. § 552a,

challenging the Department of Justice's ("DOJ's") responses to two FOIA requests that he

submitted in 2016 and 2018.  In the 2016 request, Sarras asked the DOJ Criminal Division's

Office of Enforcement Operations ("OEO") to provide him all documents in his file and all

electronic communications referencing his name.  In the 2018 request, Sarras sought the same

categories of information from the Criminal Division's International Prisoner Transfer Unit

("IPTU").  After the Court granted the government partial summary judgment, OEO conducted

and produced documents from a supplemental search.  OEO then moved for summary judgment,

which the Court now again grants in part.  Specifically, the Court finds that OEO's search in

response to the 2016 request was adequate, that it properly released a record referred to the

Department of State, and that it properly withheld certain information under FOIA Exemptions 5

and 6.  But, because the government's declarations and <u>Vaughn</u> Indexes have failed to justify the

remainder of the government's withholdings, the Court reserves judgment as to those

withholdings.

## I.    Background

On May 16, 2016, Sarras lodged the following FOIA request with the FOIA/PA Unit of

OEO:

> I am requesting that you provide me from the Office of Enforcement Operations
> (OEO) copies or print-outs of all non-duplicative: (1) documents in my file; and
> (2) other documents and written electronic communications including email
> threads referencing/containing my name sent "from" and "to" (including "carbon
> copies") the OEO.

Def.'s Status Report, Ex. A, ECF No. 33-1 ("May 2016 request").  Twenty-seven months later,

Sarras submitted a second request for the same categories of records from IPTU, which at the

time was a component of OEO.[1]  Id., Ex. C, ECF No. 33-1 ("August 2018 request").  These are

the only requests at issue in this case, but Sarras has five other FOIA requests pending with

OEO.  See Pl.'s Cross Mot. Summ. J. at 24, ECF No. 78.

OEO handled the May 2016 and August 2018 requests in identical fashion.  In both

instances, it determined that IPTU was "most likely to maintain records responsive to [Sarras's]

request" and reviewed records contained in Sarras's IPTU case file.  First Decl. of Amanda M.

Jones ("First Jones Decl.") ¶¶ 13–16, ECF No. 33-1.  Because IPTU had a policy of placing "all

documents," including "all email communications," regarding a prisoner's transfer request

"inside the prisoner's case file," OEO determined that electronic records searches were

unnecessary.  Id. ¶ 14.  After completing the search, the FOIA/PA Unit reviewed responsive

records line-by-line and made withholding and segregability determinations pursuant to FOIA

Exemptions 5, 6, 7(C), and 7(F).  Id. ¶¶ 17–44.  Additionally, OEO referred 119 pages of records

---

[1]  Since the submission of Sarras's FOIA requests, IPTU has moved from OEO to the
Criminal Division's Office of International Affairs.  See 28 C.F.R. § 0.64-2; DOJ Manual § 9-
35.020 (2018).  Because IPTU was within OEO during the events underlying this case, the Court
will refer to IPTU as a component of OEO for ease of reading.

to the federal Bureau of Prisons ("BOP"), Decl. of Kristi Scarantino ¶ 5, ECF No. 28-3, and one record to the Department of State, Second Decl. of Amanda M. Jones ¶ 7, ECF No. 39-1.

In March 2019, Sarras filed suit against DOJ alleging that it had violated FOIA by failing to provide records responsive to his requests. See Compl. ¶¶ 1, 4, ECF No. 1. In September 2020, following several months of processing and production, the government moved for summary judgment. See Mot. for Summ. J., ECF No. 28. In August 2021, the Court granted OEO's motion in part and denied it in part. See Op. and Order ("Op."), ECF No. 44. Specifically, the Court granted summary judgment to OEO on the adequacy of its search in response to Sarras's August 2018 request. Id. at 10–12. The Court reserved judgment, however, on the adequacy of the search conducted in response to Sarras's May 2016 request because the government's declarations failed to aver that "all files likely to contain responsive materials were searched." Id. at 8 (cleaned up). The Court also reserved judgment as to whether OEO had properly withheld a Department of State record and documents related to the processing of Sarras's FOIA requests. Id. at 12–20.

Because the FOIA/PA Unit searched only IPTU's records in response to Sarras's May 2016 request, the unit determined that supplemental searches should be conducted following the Court's order. First Decl. of Traci McCoy ("First McCoy Decl.") ¶ 15, ECF No. 72-1. The FOIA/PA Unit sent search requests to the other three units of OEO—the Electronic Surveillance Unit ("ESU"), Policy Statutory Enforcement Unit ("PSEU"), and Special Operations Unit ("SOU")—and conducted a search of its own records as well. Id. ¶¶ 15–16, 26.

The ESU and PSEU searches proceeded similarly and uncovered no records. The FOIA point-of-contact in each unit entered the search term "Donatos Sarras" and "Sarras" into the unit's computer tracking database with no date limitations. Id. ¶¶ 18–19; Second Decl. of Traci

McCoy ("Second McCoy Decl.") ¶ 12, ECF No. 83-1.  The units' databases track authorization

requests that require the approval of senior personnel in the Criminal Division's Office of the

Assistant Attorney General.  First McCoy Decl. ¶¶ 18–19.  Because the database searches did not

yield results, ESU and PSEU did not conduct additional searches.  Id.; Second McCoy Decl. ¶¶

13–14.

  The SOU and FOIA/PA Unit's searches did bear fruit.  Starting with the SOU search, that

unit's FOIA point-of-contact entered the terms "Donatos Sarras" and "Sarras" into SOU's

computer database, with no date limitations, and identified one case file.  First McCoy Decl. ¶

20.  Because the search yielded responsive records and the records' content indicated other

electronic records existed, SOU searched its electronic network drives, using the term "Sarras"

with no date limitations.  Id. ¶ 21.  That search identified an additional four documents, whose

content suggested that a potentially responsive email thread existed.  Id. ¶¶ 21–22.  The

FOIA/PA Unit coordinated with the Criminal Division's Information Technology Management

("ITM") Unit to search the email account of the SOU staff member assigned to Sarras's

investigation.  Id. ¶ 22.  ITM conducted two searches.  Id. ¶¶ 23–24.  The first one, which used

the search terms "Donatos" and "Sarras," produced no results.  Id. ¶ 23.  The second search,

which used the names of an informant and FBI agent involved in Sarras's case as search terms,

produced 136 emails.  Id. ¶¶ 24–25.  The FOIA/PA Unit reviewed the emails and determined that

they were not responsive because they did not reference Sarras.  Id. ¶ 25.

  The FOIA/PA Unit's search located potentially responsive documents in both the unit's

computer tracking database and in staff members' email accounts.  Id. ¶¶ 26–27, 29.  Of the

records in the computer database, the FOIA/PA Unit determined that four case files contained

potentially responsive pages.  Id. ¶¶ 26–27.  Because the case files included copies of emails, the

FOIA/PA Unit coordinated with ITM to search eight custodians' email accounts yielding 5,750 potentially responsive pages.  Id. ¶ 29–30.  Even though the FOIA/PA Unit has maintained only electronic case files since approximately February 2014, the unit also searched its archived computer database and found no results.  Id. ¶ 28.

After completing these searches, OEO reviewed every page line-by-line and segregated and disclosed all non-exempt information.  Id. ¶ 67.  OEO also referred ten pages to the FBI for review.  Decl. of Michael G. Seidel ("Seidel Decl.") ¶ 4, ECF No. 72-2.  As a result of these searches, OEO released documents to Sarras in four batches between December 2021 and December 2022.  First McCoy Decl. ¶¶ 33–36.  The government moved for summary judgment in January 2023, and Sarras cross-moved for summary judgment in March.  Def.'s Mot. Summ. J., ECF No. 73-1; Pl.'s Cross Mot. Summ. J.

## II.    Legal Standard

"Summary judgment is the typical and appropriate vehicle to resolve FOIA disputes." Citizens for Resp. & Ethics in Wash. v. Dep't of Homeland Sec., 525 F. Supp. 3d, 181, 188 (D.D.C. 2021) (Cooper, J.) ("CREW").  When reviewing a motion for summary judgment under FOIA, "the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester," and summary judgment is appropriate only after "the agency proves that it has fully discharged its FOIA obligations."  White Coat Waste Project v. Dep't of Veterans Affs., 404 F. Supp. 3d 87, 95 (D.D.C. 2019) (cleaned up).  "[T]he burden of proof is always on the agency to demonstrate that it has fully discharged its obligations under the FOIA."  McKinley v. FDIC, 756 F. Supp. 2d 105, 111 (D.D.C. 2010).

### III.  Analysis

Congress enacted FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976) (cleaned up).  The statute thus requires an agency to perform an *adequate* search—*i.e.*, a search that is "reasonably calculated to uncover all relevant documents."  Weisberg v. DOJ, 705 F.2d 1344, 1350-51 (D.C. Cir 1983).  At the same time, "Congress sought to balance the public's interest in governmental transparency against legitimate governmental and private interests that could be harmed by release of certain types of information."  United Techs. Corp. v. DOD, 601 F.3d 557, 559 (D.C. Cir. 2010) (cleaned up).  To that end, Congress enumerated nine statutory exemptions.  Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002).  FOIA's "strong presumption in favor of disclosure" requires the statutory exemptions "to be narrowly construed."  Id. (cleaned up).

Sarras once again challenges the adequacy of OEO's search in response to his 2016 request and the legitimacy of the government's (both OEO's and the FBI's) withholdings.[2]  As to adequacy, summary judgment is appropriate where the agency demonstrates "beyond material

---

[2]  Sarras has also renewed his request for declaratory relief and added a request for injunctive relief regarding the government's delayed responses to his FOIA requests.  See Pl.'s Cross Mot. Summ. J. at 33.  The Court rejects these requests.  As the Court noted previously, "the weight of legal authority in this circuit indicates that declaratory judgment in the FOIA context is reserved for cases involving policy or practice violations where agencies engage in patterns or have policies of denying FOIA requests."  Op. at 5 n.4 (quoting Sabra v. Customs & Border Prot., No. 20-cv-681 (CKK), 2021 WL 796166, at *4 (D.D.C. Mar. 2, 2021)) (cleaned up).  In a nod to this standard, Sarras alleges in his cross-motion for summary judgment that OEO has a "practice or policy" of violating FOIA's statutory deadlines.  Pl.'s Cross Motion Summ. J. at 33.  But a "plaintiff—even a *pro se* plaintiff—may not amend the complaint by raising an issue for the first time in a brief in opposition to a motion for summary judgment."  SAI v. Transp. Sec. Admin., 315 F. Supp. 3d 218, 234 (D.D.C. 2018).  Sarras also seeks injunctive relief because of his five still-pending FOIA requests.  See Pl.'s Cross Motion Summ. J. at 33.  The Court will not permit Sarras to shoehorn these requests, which were not mentioned in his complaint, into the case at this stage of litigation.

doubt," Truitt v. Dep't of State, 897 F.2d 540, 542 (D.C. Cir. 1990) (cleaned up), "that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested," Oglesby v. Dep't of Army, 920 F.2d 57, 68 (D.C. Cir. 1990). As to FOIA's exemptions, summary judgment is appropriate where the agency demonstrates that the claimed exemptions "apply to each record for which they are invoked." CREW, 525 F. Supp. 3d at 187. The agency can make this showing "through the submission of an index of documents, known as a Vaughn Index, sufficiently detailed affidavits or declarations, or both." Agrama v. IRS, 282 F. Supp. 3d 264, 274 (D.D.C. 2017) (cleaned up). When evaluating whether an agency is entitled to summary judgment, the agency's declarations are entitled a presumption of good faith. See, e.g., CREW, 525 F. Supp. 3d at 188. The Court will first address the adequacy of the search OEO conducted in response to Sarras's 2016 request before turning to the government's productions and withholdings.

A. Adequacy of the Search

On summary judgment, an agency can carry its burden as to adequacy by submitting a reasonably detailed affidavit (1) "setting forth the search terms and the type of search performed" and (2) "averring that all files likely to contain responsive materials . . . were searched." Iturralde v. Comptroller of Currency, 315 F.3d 311, 313–14 (D.C. Cir. 2003). In turn, the FOIA plaintiff can rebut the agency's affidavit by "provid[ing] countervailing evidence as to the adequacy of the agency's search." Id. at 314 (cleaned up). While "purely speculative claims about the existence and discoverability of other documents" are insufficient to rebut a reasonably detailed affidavit on summary judgment, SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (cleaned up), summary judgment is inappropriate where "a review of the record raises substantial doubt, particularly in view of well-defined requests and positive indications of

overlooked materials," <u>Valencia-Lucena v. U.S. Coast Guard</u>, 180 F.3d 321, 326 (D.C. Cir. 1999) (cleaned up).

### 1.  *Search in Response to Sarras's May 2016 FOIA Request*

OEO's supplemental search, which it undertook in response to Sarras's 2016 FOIA request, was adequate.  As for the first adequacy requirement—that the agency "set[] forth the search terms and the type of search performed," <u>Iturralde</u>, 315 F.3d at 313–14—the government submitted two declarations prepared by Traci McCoy, the Trial Attorney in OEO's FOIA/PA Unit who "coordinated all supplemental searches for Plaintiff's OEO Request," and a declaration from Michael Seidel, the chief of the FBI section tasked with responding to FOIA requests.[3] Second McCoy Decl. ¶ 8; Seidel Decl. ¶¶ 1–2.  The two McCoy declarations set forth the searches each OEO unit performed, including the databases reviewed and the search terms and dates used, and explain each unit's decisions about which databases and custodial records to search.  First McCoy Decl. ¶¶ 16–30; Second McCoy Decl. ¶¶ 11–15.

ESU and PSEU both began by searching their tracking databases.  First McCoy Decl. ¶¶ 18–19.  The units' responsibilities are to review "all federal electronic surveillance requests" (ESU) and to review "requests . . . to use, or consult[] about, numerous investigative tools or prosecutorial actions" (PSEU).  Second McCoy Decl. ¶¶ 13–14.  If either ESU or PSEU had received an authorization request referencing Sarras, the request "would have appeared in [the unit's] tracking database."  <u>Id.</u>  Because those databases yielded no results, neither unit undertook additional searches.  <u>Id.</u>

---

[3]  Sarras has challenged "the accuracy and detail of Ms. McCoy's declarations" and suggests that her declaration "be evaluated as such of someone engaged in the processing of FOIA requests."  Pl.'s Reply at 3, ECF No. 86.  "[T]he Court has no reason to doubt defendant's declarations."  <u>Blank Rome LLP v. Dep't of the Air Force</u>, No. 15-cv-1200 (RCL), 2016 WL 5108016, at *9 (D.D.C. Sept. 20, 2016).

By contrast, because initial searches in the SOU and FOIA/PA databases identified potentially responsive records, those units searched additional locations.  First McCoy Decl. ¶¶ 20–30.  SOU searched its electronic network drives and the email account of the sole SOU member assigned to Sarras's investigation.  Id. ¶¶ 22–25.  The FOIA/PA Unit also searched its electronic network drive, archived computer database, and the email accounts of eight FOIA/PA Unit staff members who had been "assigned to Plaintiff's requests, performed FOIA/PA administrative tasks related to Plaintiff's request, or were mentioned in Plaintiff's request files." Id. ¶¶ 26–29.  These searches easily satisfy the requirement that the agency conduct "a search reasonably calculated to uncover all relevant documents."  Weisberg, 705 F.2d at 1351.

The two McCoy Declarations also meet the second adequacy requirement that the agency attest that "all files likely to contain responsive materials . . . were searched."  Iturralde, 315 F.3d at 314.  In her first declaration, Ms. McCoy "aver[red] that the FOIA/PA Unit's supplemental search was reasonably calculated to uncover all potentially responsive records and that all files identified as likely to contain responsive documents were searched."  First McCoy Decl. ¶ 32.  In her second declaration, she added that "the Criminal Division determined that all locations likely to contain potentially responsive records were searched within ESU," "within PSEU," and "within SOU."  Second McCoy Decl. ¶¶ 13–15.

The burden thus shifts to Sarras to rebut the agency's affidavit by "provid[ing] countervailing evidence as to the adequacy of the agency's search."  Iturralde, 315 F.3d at 314 (cleaned up).  Sarras challenges the supplemental search on several grounds.  His specific challenges vary from OEO unit to unit, but, in broad strokes, he contests OEO's failure: (1) to provide screenshots showing "no results" (where searches yielded no results); (2) to use the date of the search as the cut-off date for searches; (3) to provide details about which exact databases

9

or custodial records were searched and why; and (4) to search in additional databases and custodial email accounts.[4]  Pl.'s Cross Mot. Summ. J. at 7–12.

None of these challenges raises "substantial doubt" about the adequacy of OEO's search. Valencia–Lucena, 180 F.3d at 326.  First, OEO is not required to provide screenshots or other proof that searches yielded no results.  Absent "countervailing evidence or apparent inconsistency of proof," which Sarras has not produced, "affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice to demonstrate compliance with the obligations imposed by the FOIA." Perry v. Block, 684 F.2d 121, 127 (D.C. Cir. 1982).  Second, even though OEO used the date of its *original* search as the cut-off date for the supplemental searches, rather than the dates of the *supplemental* searches, this does not foreclose the adequacy of OEO's search.[5]  D.C. Circuit courts have "routinely" found that an original "date-of-search cut-off" is "reasonable," even for searches performed after that date. McClanahan v. DOJ, 204 F. Supp. 3d 30, 47 (D.D.C. 2016), aff'd, 712 F. App'x 6 (D.C. Cir. 2018); see also id. (collecting cases).  Third, D.C. Circuit courts have rejected the contention that agency affidavits must provide detailed "information regarding the actual databases or indices searched."  Citizens for Resp. & Ethics in Washington v. Nat'l Indian Gaming Comm'n, 467 F. Supp. 2d 40, 50 (D.D.C. 2006).  "FOIA does not demand this degree of detail."  Id.  And, finally,

---

[4]  In his cross-motion for summary judgment, Sarras also asserts that the ESU and PSEU searches were inadequate because neither unit ran searches for "Sarras," as opposed to "Donatos Sarras."  Pl.'s Cross Mot. Summ. J. at 7–8.  Following Sarras's motion, ESU and PSEU conducted additional searches with just the term "Sarras."  Second McCoy Decl. ¶ 12.  Those searches produced no results.  Id. ¶¶ 13–14.

[5]  OEO ran its initial search for the 2016 request on July 7, 2016.  First McCoy Decl. ¶ 22 n.6.  When OEO sent the search criteria to ITM for some of the supplemental searches, OEO mistakenly listed July 7, 2017, instead of 2016, as the date.  Id.  As a result, some searches used July 7, 2017 as the cut-off date, but no search used a cut-off date prior to July 7, 2016.

as this Court clarified in its 2021 opinion, "[t]here is no requirement that the agency search every

record system." Oglesby, 920 F.2d at 68.

### 2.  Narrowing of the May 2016 Request

Sarras also challenges the supplemental search on the grounds that OEO improperly

narrowed the scope of his request by reviewing only administrative reports.  Pl.'s Cross Motion

Summ. J. at 13.  That was not the case.  The source of Sarras's understandable confusion is a

paragraph in the First McCoy Declaration noting that "Plaintiff agreed to narrow the scope of the

FOIA records located to FOIA/PA Unit administrative reports."  First McCoy Decl. ¶ 31.

However, as the Second McCoy Declaration clarifies, "[t]he FOIA/PA Unit Administrative

Reports are *only one* category of documents located as a result of the Criminal Division's

supplemental searches."  Second McCoy Decl. ¶ 17 (emphasis added); see also First McCoy

Decl., Ex. E (hereinafter, "Supplemental Vaughn Index").  OEO still reviewed other categories

of documents.  See Second McCoy Decl. ¶ 17 ("The FOIA/PA Unit reviewed all 5,750 pages it

located in response to its FOIA/PA Unit search, which included FOIA/PA Unit Administrative

Reports."); Supplemental Vaughn Index (listing, among the reviewed documents, emails,

memoranda, letters, and processing notes).  Additionally, even though OEO and Sarras agreed

that OEO would "process two examples of each type of administrative report," OEO ultimately

decided to "process[] and produce . . . all responsive, non-exempt portions of FOIA/PA Unit

Administrative Reports."  Second McCoy Decl. ¶ 17; see also Pl.'s Resp. to Def.'s Mot. to

Enlarge Time at 2–3, ECF No. 47 (explaining Sarras's understanding of the original agreement).

### 3.  IPTU Records

Separate from his challenge to the supplemental search, Sarras moves for summary

judgment on the grounds that OEO failed to adequately search IPTU files as requested in

Sarras's May 2016 request.  See Pl.'s Cross Mot. Summ. J. at 14–16.  He asserts that this Court's August 2021 opinion did not put to bed the adequacy of the search of the IPTU records in response to Sarras's May 2016 request, but rather addressed just the August 2018 request.  Id. at 14.

The Court now makes explicit what was implicit in its prior opinion:  OEO adequately searched IPTU's files in response to the May 2016 request.  As the Court noted previously, OEO adequately "described the search terms used and search performed."[6]  Op. at 8.  And OEO submitted an affidavit confirming that all IPTU files "likely to contain responsive materials . . . were searched."  Iturralde, 315 F.3d at 314.  Specifically, OEO's affiant Amanda Jones averred that it is "the policy of IPTU to place all documents," including "all email communications" involving a prisoner's transfer request, "inside the prisoner's case file."  First Jones Decl. ¶ 14. Given this policy, it was perfectly reasonable for IPTU to conclude that a search of Sarras's case file would contain all the IPTU records responsive to the May 2016 request.

Sarras raises two additional challenges to OEO's search of IPTU files in response to his May 2016 request.  First, he contends the search was inadequate because OEO located IPTU records as part of its supplemental search.  See Pl.'s Cross Motion Summ. J. at 15 (explaining that IPTU records were found in OEO's February 2022 interim response).  However, as the Second McCoy Declaration explains, the IPTU records identified during the supplemental search were "duplicates of pages" that OEO had included in its November 2019 response.  Second McCoy Decl. ¶ 18; see also Supplemental Vaughn Index at 4 (indicating that the non-duplicate

---

[6]  Specifically, in response to Sarras's May 2016 request, the IPTU paralegal "assigned to the duty of conducting FOIA searches" retrieved Sarras's case file from "the closed Greek case files" and "copied his entire case file."  Op. at 8 n.7 (quoting First Jones Decl. ¶ 14) (cleaned up).

files in the February 2022 interim response originated in the FOIA/PA unit—not IPTU).  Second,

Sarras alleges that OEO improperly limited its search of IPTU records to "documents related to

[a] transfer request" (as well as "email communications regarding a case").  Pl.'s Cross Mot.

Summ. J. at 16.  However, as this Court noted in its prior opinion, Sarras himself acknowledged

that IPTU "only handles treaty transfer requests."  Op. at 11 n.9 (quoting Pl.'s First Opp. Summ.

J. at 5, ECF No. 35).  Therefore, OEO's search, which was designed to capture "all [IPTU]

documents related to [a prisoner's] transfer request," see Jones Decl. ¶ 14, was reasonably likely

to capture all IPTU records responsive to Sarras's May 2016 request.

In sum, the Court grants summary judgment to the government as to the adequacy of its

search in response to Sarras's May 2016 request.

B.  Withholdings

Sarras next challenges various withholdings made by the government.  An agency is

entitled to summary judgment on its withholdings if it demonstrates "that its claimed FOIA

exemptions apply to each record for which they are invoked."  CREW, 525 F. Supp. 3d at 187.

Again, the agency can make this showing "through the submission of an index of documents,

known as a Vaughn Index, sufficiently detailed affidavits or declarations, or both."  Agrama, 282

F. Supp. 3d at 273.  "The description and explanation the agency offers should reveal as much

detail as possible as to the nature of the document, without actually disclosing information that

deserves protection."  Oglesby v. Dep't of Army, 79 F.3d 1172, 1176 (D.C. Cir. 1996)

OEO has produced a Supplemental Vaughn Index, which describes the records it

withheld in full or in part.  Additionally, OEO submitted three declarations explaining the basis

of withholdings by category of exemption.  Sarras opposes summary judgment on three grounds.

First, he contends that certain withheld records fail to qualify for the deliberative process

privilege.  Second, he claims that OEO improperly redacted information under the personal privacy exemption.  And, third, he asserts that the government has failed to carry its burden as to the rest of its withholdings due to inconsistencies and defects in its productions, declarations, and Supplemental Vaughn Index.  The Court will grant the government's motion for summary judgment as to the first two objections but reserves judgment on the third.

### 1. Exemption 5

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5).  Under this exemption, an agency is permitted to assert "the privileges that the Government could assert in civil litigation against a private litigant," including "the deliberative process privilege."  Nat'l Sec. Archive v. CIA, 752 F.3d 460, 462 (D.C. Cir. 2014).  The deliberative process privilege is aimed at "enhanc[ing] the quality of agency decisions" by ensuring that officials can "communicate candidly among themselves."  Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8–9 (2001) (cleaned up).  To that end, courts consider whether the record is "predecisional" and "deliberative."  Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980) (cleaned up).  A record is "predecisional" if "it was generated before the adoption of an agency policy[.]"  Id.  And a record is "deliberative" if "it reflects the give-and-take of the consultative process."  Id.  The exemption thus covers "recommendations, draft documents, proposals, suggestions," and the like.  Id.

The government maintains that the information withheld under Exemption 5 "falls squarely within the deliberative process privilege."  First McCoy Decl. ¶ 38.  Sarras contests this representation as it pertains to three sets of records: (1) the FOIA/PA Unit's processing notes, (2) a cover sheet for a SOU memorandum, and (3) two IPTU memoranda about Sarras's treaty

transfer request (which were also at issue in the last round of summary judgment briefing).  Pl.'s Cross Mot. Summ. J. at 23–25, 29–33.  The Court determines the three sets of documents fall within the deliberative process privilege and grants the government's motion for summary judgment as to the Exemption 5 withholdings of those documents.[7]

First, Sarras contends that two pages of FOIA/PA processing notes, marked as Document 571–72 in the Supplemental Vaughn Index, should be released because they constitute OEO's "policy" for handling Sarras's still pending FOIA requests.  Pl.'s Cross Mot. Summ. J. at 23–24.  A FOIA/PA Unit staff member created the notes while processing records in response to Sarras's May 2016 request, and the notes include "processing recommendations," "analysis and assessments regarding applicable exemptions," and "research intended to assist the decision maker," namely the FOIA/PA Unit Chief or Deputy Chief.  First McCoy Decl. ¶ 44.  Because Sarras has submitted additional FOIA requests that are still pending, OEO "continue[s] to rely on recommendations and assessments within these processing notes to make present day processing recommendations and disclosure evaluations."  Id. ¶ 45.  Sarras does not argue that the notes lost their deliberative process privilege because OEO adopted their reasoning when it released documents in response to Sarras's May 2016 request.  Rather, he contends that the notes lost their privilege because the notes, themselves, constitute OEO's "policy" for responding to Sarras's still open FOIA requests.  Pl.'s Cross Mot. Summ. J. at 23–24.

The FOIA/PA staffer's "recommendations and assessments" are not OEO "policy."  An agency's "working law," "binding [] opinions," or "interpretations that the agency actually

---

[7]  As discussed below, the absence of pagination in the government's production and inconsistencies in its declarations and indexes preclude the Court from granting summary judgment as to all of the government's withholdings.  But, because Sarras was able to match some pages to Vaughn Index entries and then challenge the corresponding withholdings, the Court resolves those challenges here.

applies in cases before it" rise to the level of agency policy.  Elec. Frontier Found. v. DOJ, 739

F.3d 1, 7 (D.C. Cir. 2014) (cleaned up).  And statements of agency policy "typically flow from a

superior with policy-making authority to a subordinate who carries out the policy."  Id. at 9

(cleaned up).  By contrast, "advice to a superior," "suggested dispositions of a case," and

proposals that can "be freely disregarded" do not constitute agency policy.  Coastal States Gas

Corp., 617 F.2d at 868.  The processing notes do not fit the mold of agency policy.  Even if the

FOIA/PA Unit uses the notes to evaluate documents in response to Sarras's open FOIA requests,

the notes are still recommendations from a staffer to a superior.[8]  See also Def.'s Opp. at 11,

ECF No. 83 ("The processing notes serve as a mere reference and have never been adopted as a

binding policy recommendation. . . .").

      Second, Sarras seeks production of portions of a SOU cover sheet (Document 1) that are

redacted pursuant to Exemption 5.  The Court finds that the deliberative process privilege applies

to the redacted information.  The FBI had submitted to SOU a request to employ a bodywire as

part of an investigation into Sarras.  First McCoy Decl. ¶ 46.  Before SOU authorized the

bodywire, FBI sent a notice to SOU that it was withdrawing its request.  Id.  The Exemption-5-

redacted portions of Document 1 reflect the SOU staff member's recommendation for approving

the FBI's withdrawal request.  Id.  Sarras contends that the redacted portions are not

predecisional because "at the time the cover sheet was made, the FBI already had withdrawn its

request."  Pl.'s Cross Mot. Summ. J. at 25.  But even though the FBI had already sent notice of

---

    [8]  For evidence that the FOIA/PA Unit adopted the staffer's notes as policy, Sarras points
to OEO's violation of statutory deadlines for each of his FOIA requests (the two at issue here
and the additional five he submitted).  Pl.'s Cross Mot. Summ. J. at 24.  Nothing in the record
suggests, however, that OEO missed the deadlines because of a policy set forth in Documents
571–72.

its withdrawal request, SOU had not yet decided whether to "approve the FBI withdrawal request." First McCoy Decl. ¶ 46. The redacted information is still predecisional because "it precedes [SOU's] final withdrawal determination."[9] Id.

Finally, Sarras challenges OEO's application of the deliberative process privilege to two IPTU memoranda (Documents 8 and 37), which were also at issue in the previous round of summary judgment briefing. Both memoranda contain IPTU attorneys' analysis and recommendations regarding Sarras's prisoner transfer request. See Def.'s Reply, Ex. B ECF No. 39-2 ("Doc. 8"); Ex. C, ECF No. 39-2 ("Doc. 37"). OEO released both documents in substantial part, with redactions of only certain information "prepared by the IPTU attorney" or "reflecting the summarization and analysis of the attorney." Def.'s Status Report, Ex. E ("Crim. Div. Vaughn Index") at 3, 13, ECF No. 33-1. After its 2021 opinion, the Court directed the government to address Sarras's contention that the withheld information in the memoranda had lost its predecisional character—and therefore its privilege protection—because the "agency [had] adopt[ed] the document as its own." Judicial Watch, Inc. v. DOD, 847 F.3d 735, 739 (D.C. Cir. 2017) (cleaned up); see Min. Order (Nov. 10, 2022).[10]

---

[9] Sarras also contends that he is entitled to summary judgment because OEO alternately referred to Document 1 as a "covert cover sheet" and a "cover sheet memorandum." Pl.'s Cross Mot. Summ. J. at 25. The Court will not fault OEO for using two different phrasings as both are accurate. Document 1 is titled "covert cover sheet" and is the "cover sheet" to a SOU "memorandum." Id., Ex. 2.3.

[10] Specifically, the Court asked the government to address the merits of Sarras's argument "based on Sluss v. U.S. Department of Justice, 1:17-cv-00064, 2019 WL 2493447 (D.D.C. June 14, 2019), that the Office of Enforcement Operations Director's assent to the International Prisoner Transfer Unit's recommendation based on the same denial codes cited in the Unit's memorandums stripped the documents of their deliberative process privilege status." Min. Order (Nov. 10, 2022).

The Court finds that the OEO Directors, who served as the final decisionmakers for Sarras's transfer request, did not adopt the withheld portions of Documents 8 and 37 as their own.[11]  For the deliberative process privilege "to dissipate by virtue of an express adoption, the agency must accept the document's reasoning, not merely its conclusions."  Sluss v. DOJ, No. 17-cv-00064, 2019 WL 2493447, at *4 (D.D.C. June 14, 2019).  The directors appear to have adopted some of the reasoning in the *unredacted* portions of the documents.  Specifically, the IPTU attorney recommended the directors deny Sarras's transfer request based on three denial codes: DOMY (Plaintiff is a domiciliary of the U.S.), SROC (seriousness of the offense) and JUST (transfer would not serve the ends of justice).  Doc. 8 at 1, Doc. 37 at 1; see also First McCoy Decl. ¶ 76.  The directors then listed these denial codes as the basis for their decisions.  Doc. 8 at 5, Doc. 37 at 6.  But, the directors were "not required to adopt all aspects of the analysis presented in Document Nos. 8 and 37" in reaching their decisions.  First McCoy Decl. ¶ 77.  And they did not.  As Ms. McCoy averred, "[t]he withheld information contains facts, analysis, and detailed thoughts and considerations of the author *not adopted by the decision maker*."  Id. (emphasis added).  Absent "contrary evidence in the record [or] evidence of agency bad faith," the court takes these declarations as made in good faith.  Citizens for Responsibility & Ethics in Washington v. Dep't of Labor, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) (cleaned up).

Sarras's alternative argument fails for the same reason.  He contends that the redacted portions of Document 8 and 37 lost their Exemption 5 privilege because, in two letters sent to the Hellenic Ministry of Justice, IPTU explained that it had denied Sarras's transfer request because Sarras was a "domiciliary" of the U.S., his offense was "serious[]," and transfer would not "serve

_____

[11]  Two different individuals served as OEO Director at the time the documents were created.  See Docs. 8, 37.

the ends of justice"—in other words, DOMY, SROC, and JUST.  See Pl.'s Cross Mot. Summ. J. at 31–32; Def.'s Mot. Summ. J., Exs. F–G.  Again, however, OEO has averred that, even though the final decisionmakers applied the recommended denial codes, they did not adopt the reasoning of the *redacted* portions of the documents.  First McCoy Decl. ¶ 77.

The Court's conclusion that the disputed documents are predecisional and deliberative does not end the inquiry.  The Court still must determine whether any of the withholdings are subject to the FOIA Improvement Act of 2016, and, if so, whether the agency has shown that it "reasonably foresees that disclosure would harm an interest protected by" Exemption 5.  5 U.S.C. § 552(a)(8)(A)(i)(I).

Of the challenged records, only the two IPTU treaty transfer requests (Documents 8 and 37) are subject to the FOIA Improvement Act, and OEO has demonstrated "foreseeable harm" from disclosure.[12]  The Improvement Act applies only to FOIA requests lodged after June 30, 2016, FOIA Improvement Act § 6, 130 Stat. 538, 544–545 (2016), and thus governs the response to Sarras's second FOIA request (submitted in August 2018) but not his first (submitted in May 2016).  In the previous summary judgment motion, the parties did not parse out which documents were identified in response to which search, presumably because OEO's two searches produced identical records.  See Op. at 16 n.13.  As a result, any record withheld in response to Sarras's May 2016 request was also withheld in response to his August 2018 request, triggering

_____

[12]  The Court also previously withheld judgment on whether OEO satisfied the foreseeable harm requirement for Exemption 5 withholdings on documents related to the processing of Sarras's FOIA requests.  Op. at 18.  OEO has now removed the Exemption 5 redactions from the documents at issue, mooting this issue.  First McCoy Decl. ¶ 13 n.3; see also Isasi v. Off. of Att'y Gen., No. 09-5122, 2010 WL 2574048, at *1 (D.C. Cir. June 2, 2010) (per curiam) ("The FOIA claim against the agency was properly dismissed as moot, because the [] pages appellant had requested were subsequently released to him . . . .")

the government's obligation to justify each withholding under the Improvement Act.  Id.  But, now, because OEO carried out the supplemental search only in response to Sarras's 2016 request, parsing is necessary.  OEO identified Documents 8 and 37 as part of its original searches but did not locate the FOIA/PA processing notes (Documents 571–72) and SOU cover sheet (Document 1) until its supplemental search.  See First McCoy Decl. ¶ 15; see Supplemental Vaughn Index.  Thus, only Documents 8 and 37 are subject to the Improvement Act, and the Court has previously determined that OEO demonstrated that their disclosure would cause foreseeable harm.  See Op. at 17.

Therefore, the Court grants the government's motion for summary judgment as to the legitimacy of the Exemption 5 withholdings in Documents 1, 8, 37, 571, and 572.

2. *Exemption 6*

FOIA Exemption 6 protects information in "personnel and medical files and similar files when the disclosure of such information would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  Redactions must meet two requirements to fall within Exemption 6's ambit.  First, the redactions must qualify as "personnel" files, meaning they contain "information which applies to a particular individual."  Dep't of State v. Washington Post Co., 456 U.S. 595, 602 (1982).  Second, "disclosure [must] compromise a substantial, as opposed to a *de minimis*, privacy interest.  If a substantial privacy interest is at stake, then the court must balance the individual's right of privacy against the public interest in disclosure."  Prison Legal News v. Samuels, 787 F.3d 1142, 1147 (D.C. Cir. 2015) (cleaned up).

Sarras challenges OEO's withholding of IPTU employees' names and identifying information in records released from December 2021 to December 2022.[13]  Pl.'s Cross Mot. Summ. J. at 26–27.  The IPTU employees referenced in the records assisted the FOIA/PA Unit "with making disclosure determinations" regarding IPTU records.  First McCoy Decl. ¶ 62. Sarras does not challenge the first part of the Exemption 6 test—that the redacted information qualifies as personnel files—but does contend that disclosure "would not compromise a substantial privacy interest and would contribute to the public's understanding of IPTU's operations or activities and IPTU's compliance with FOIA."  Pl.'s Cross Mot. Summ. J. at 26.

OEO properly withheld the names and identifying information of IPTU employees under Exemption 6.  First, disclosure would compromise the IPTU employees' substantial privacy interest.  As OEO explained, the IPTU employees are responsible for "reviewing the details of [] treaty transfer files and making recommendations . . . [about] whether an individual should complete his or her sentence in the United States."  Jones Decl. ¶ 33.  As a result, the release of the employees' personal information "could subject them to harassment and unwanted publicity."  First McCoy Decl. ¶ 60.  Given the IPTU staff's "sensitive law enforcement duties," id. ¶ 65, they face more than the "remote possibility of harassment,"  Kleinert v. Bureau of Land Mgmt., 132 F. Supp. 3d 79, 97 (D.D.C. 2015); see Nova Oculus Partners, LLC v. SEC, 486 F. Supp. 3d 280, 290 (D.D.C. 2020) (agency properly invoked Exemption 6 to withhold identifying information about the staff involved in processing a FOIA request); Jackson v. Exec. Off. for U.S. Att'ys, No. 17-cv-02208 (TNM), 2019 WL 1046295, at *3 (D.D.C. Mar. 5, 2019)

---

[13]  Sarras also challenges Exemption 6 withholdings in Document 8 and 37, but the Court has already granted summary judgment for the government on those withholdings.  See Op. at 13 n.11.  Moreover, because the rest of his Exemption 6 challenges involve documents identified in the supplemental search, the government does not need to justify the withholdings under the FOIA Improvement Act.

(Exemption 6 protected the name of a United States Attorney's Office employee when disclosure would have been to a federal inmate); Pinson v. DOJ, 313 F. Supp. 3d 88, 112 (D.D.C. 2018) (Exemption 6 protected BOP employees' telephone numbers because the individuals might be subject to harassment); see also Seidel Decl. ¶ 21 (explaining that the FBI withheld the names of non-FBI federal government personnel because "it is possible for a person targeted by law enforcement to carry a grudge which may last for years, and to seek revenge on the personnel involved in a particular investigation").  Second, the IPTU employees' privacy interests outweigh the public's need to learn their names.  The employees are "non-public-facing employees" and "do not hold leadership positions."  First McCoy Decl. ¶ 61.  See Vosburgh v. IRS, No. 93-cv-1493-MA, 1994 WL 564699, at *4 (D. Or. July 5, 1994), aff'd, 106 F.3d 411 (9th Cir. 1997) ("In general, public disclosure of the identities of low-level employees does not significantly shed light on the activities or operations of the government.").  And OEO did release the names of OEO employees who serve in a supervisory capacity or hold leadership positions.  First McCoy Decl. ¶ 55; cf. Kleinert, 132 F. Supp. 3d at 97 (Exemption 6 redactions were improper since the agency had "categorical[ly] redact[ed] [] all its employees' names and email addresses").  The Court, therefore, finds that OEO properly withheld the names and identifying information of lower-level IPTU employees in the records released from December 2021 to December 2022.

3. *Remainder of the Withholdings*

Because of defects and inconsistencies in the government's productions, affidavits, and indexes, the Court must reserve judgment on the remainder of the withholdings in the

government's supplemental search releases.[14]  Specifically, there are three issues that preclude summary judgment:  (1) some of OEO's productions were not paginated and contained fully redacted pages with no claimed exemptions, (2) OEO failed to clarify which documents from its February 2022 release were duplicates of an earlier release, and (3) the government has not adequately explained which documents the FBI reviewed and redacted.

          a.   <u>No Pagination and Redacted Documents with No Claimed Exemptions</u>

Sarras reports, and the government does not dispute, that three of OEO's four supplemental releases have no pagination.  <u>See</u> Pl.'s Cross Mot. Summ. J. at 17–20.  OEO's <u>Vaughn</u> Index, however, is organized by page number.  Because the Court and Sarras cannot match index entries to released pages, it is "impossible [in many cases] to understand which claimed exemptions appl[y] to which documents."  <u>Bloomgarden v. DOJ</u>, No. 12-cv-0843 (ESH), 2016 WL 471251, at *1 (D.D.C. Feb. 5, 2016).  In addition, Sarras indicates that many pages are fully redacted and contain no indication of what exemption applies.  <u>See</u> Pl's Mot. Summ. J., Ex. 2.2(b).  These pages may be subsequent pages to documents whose first page lists the claimed exemption, but—in the absence of page numbers—it is again impossible to tell which exemption applies to which page.

          b.   <u>Duplicate Documents</u>

---

[14]  Though the Court reserves judgment as to these withholdings, the Court notes that it previously found the government properly applied Exemptions 3, 6, and 7 to the documents released after its original searches.  <u>See</u> Op. at 13 n.11.  The Court also now finds that the government properly applied Exemption 5 to the documents from the original searches.  <u>See</u> Part B.1 above.  Thus, to the extent the government can demonstrate that documents from its February 2022 release are duplicates of previously released documents, it will be entitled to summary judgment as to its withholdings.  <u>See also</u> Part B.3.b below.

While creating the Supplemental <u>Vaughn</u> Index, OEO discovered that 284 pages in its February 2022 interim release were duplicates of pages produced in the November 2019 releases. Second McCoy Decl. ¶ 18.  As a result, OEO did not include the duplicates in its supplemental index and instead created a "Duplicate Correlation Chart" to show the overlap between the two releases.  <u>Id.</u> ¶¶ 21–22; <u>see also</u> Second McCoy Decl., Ex. A ("Correlation Chart"), ECF No. 83-2.  Two deficiencies, however, remain in the Supplemental <u>Vaughn</u> Index and Correlation Chart.

First, the numbers do not add up.  The February 2022 interim release contained a total of 694 pages.  Second McCoy Decl. ¶ 18.  Of those 694 pages, OEO subsequently discovered that 284 pages were duplicates, <u>id.</u>; withheld four pages in full, Supplemental <u>Vaughn</u> Index at 4; and released 395 pages in full, <u>id.</u> at 4 n.2.  That accounts for 683 pages—eleven short of 694, the total number in the February 2022 release.[15]  Moreover, it is not clear to the Court how, after OEO discovered that 284 pages in the February 2022 release were duplicates, the total number of pages withheld in full dropped from eighty-five to four.[16]  <u>See</u> First McCoy Decl. ¶ 34 n.8; Second McCoy Decl. ¶ 18.  Because the "agency altogether fails to explain . . . these facial inconsistencies[,] . . . summary judgment in its favor is inappropriate."  <u>Bartko v. DOJ</u>, No. 13-cv-1135 (JEB), 2015 WL 13673009, at *5 (D.D.C. June 2, 2015); <u>see also id.</u> ("In the end, the

---

[15]  Footnote 2 in the Vaughn Index notes that 395 pages from the February 2022 interim response were released in full and then lists the page ranges for released documents. Supplemental <u>Vaughn</u> Index at 4 n.2.  By the Court's count, there are actually 398 pages listed in Footnote 2.  In any event, OEO has still failed to account for eight of the 694 pages in the February 2022 release.

[16]  What is more, the First McCoy Declaration notes that OEO found 338 duplicates while the Second McCoy Declaration mysteriously reduces that number to 284.  <u>See</u> First McCoy Decl. ¶ 34 n.8; Second McCoy Decl. ¶ 18.  For purposes of its current analysis, the Court will use 284 as the operative number, "but simply providing slightly different sworn statements with each subsequent [filing], without explaining the discrepancies that exist in prior sworn statements, will not do."  <u>Pinson</u>, 313 F. Supp. 3d at 128.

Court is left bewildered as to the precise number of documents being withheld in full, and it will not comb through the agency's <u>Vaughn</u> Index in an attempt to divine the breakdown on its own.")

Second, the Correlation Chart, which purports to match pages from the February 2022 release with their duplicates from the November 2019 release, is also inaccurate.  As Sarras points out, for at least two entries, the number of pages in the February 2022 release does not match the number of pages in the November 2019 release.  <u>See</u> Pl.'s Reply at 10 (noting that pages 299–313 from the February 2022 release correspond to a document that is only four pages long).  There may be a simple explanation for this mismatch.  Indeed, OEO explained that some pages—namely those marked as referred to BOP (which do not include the entries Sarras flagged)—were duplicated more than once.[17]  Correlation Chart at 4 n.1.  But the Court cannot substitute guesswork for an explanation from the agency.[18]  <u>See also</u> <u>Plunkett v. DOJ</u>, No. 11-cv-0341 (RDM), 2015 WL 5159489, at *10 (D.D.C. Sept. 1, 2015) (denying summary judgment because the Court was "simply left to guess" about withholdings because of insufficient information in the agency's declaration and <u>Vaughn</u> index).

---

[17]  The Correlation Chart also indicates that certain records not referred to BOP were also duplicated more than once (e.g., pages 21–30 from the November 2019 release appear to have been duplicated three times).  <u>See</u> Correlation Chart.  But, again, the Court's "reasonable guesses" are not adequate replacements for "specific clarification" from the agency.  <u>Negley v. FBI</u>, 169 F. App'x 591, 595 (D.C. Cir. 2006).

[18]  Sarras challenges additional features of the February 2022 release (e.g., that OEO misapplied Exemption 5 to two records, that OEO did not explain its segregation efforts, and that some of the pages were referred to BOP and yet OEO claims BOP is no longer a party to the action).  Pl.'s Cross Mot. Summ. J. at 19, 28.  Because of the ambiguities created by the current Supplemental <u>Vaughn</u> Index and Correlation Chart, the Court reserves judgment on these issues.

c.  FBI Records

The government's description of its treatment of pages 1–59 of the April 18, 2022 Response, which involve records sent to the FBI for consultation, also contains several inaccuracies.  First, the Supplemental Vaughn Index indicates that for pages 12–59 (a total of forty-eight pages), forty-three pages were withheld in full and one was released in part. Supplemental Crim Div. Vaughn Index at 6.  What happened to the remaining four pages? Second, according to the Seidel Declaration, the FBI processed a total of ten pages in response to two consultation requests from DOJ.  Seidel Decl. ¶ 4.  But more than ten pages contain the exemption "(b)(7)(E) – Per FBI."  See Supplemental Vaughn Index at 4–6 (listing the "Per FBI" exemption next to Pages 1–59).  Third and relatedly, the Seidel Declaration suggests that all the documents OEO referred to the FBI are "FBI-originated records" or "pages," in other words documents authored by FBI staff.[19]  Seidel Decl. ¶¶ 5, 7.  Document 1 (described above), however, contains the "Per FBI" redaction, and yet is a "cover sheet memorandum [authored] by an SOU staff member."[20]  First McCoy Decl. ¶ 46; Pl.'s Cross Mot. Summ. J., Ex. SJ2.3 at 1. "[T]rivial" defects, such as "typographical errors and minor ambiguities," do not defeat an agency's motion for summary judgment.  SafeCard Servs., 926 F.2d at 1202.  But the defects

---

[19]  On this point too, the Seidel Declaration has internal consistencies.  After describing OEO's two consultation requests, in which OEO sent ten FBI-originated pages, the Seidel Declaration states that "DOJ CRM located responsive law enforcement records that originated with the FBI or contain FBI information."  Seidel Decl. ¶¶ 5–7, 9.  Did the FBI review both FBI-originated documents, as well as other documents that contained FBI information?  How many documents did the FBI review in total?  Did OEO apply a "Per FBI" exemption to documents the FBI did not review?  Because these questions remain unanswered, summary judgment is not appropriate.  See Scudder v. CIA, 25 F. Supp. 3d 19, 49 (D.D.C. 2014).

[20]  The Supplemental Vaughn Index also lists Document 2 (the memorandum that corresponds to Document 1) as from "FBI Staff" when it is actually from SOU staff.  Pl.'s Cross Mot. Summ. J. at 25.  As part of clarifying which records originated with the FBI and underwent FBI review, the Court expects the government to correct this error.

identified here are not trivial.  They prevent the Court from assessing whether the "claimed

FOIA exemptions apply to each record for which they are invoked."  <u>CREW</u>, 525 F. Supp. 3d at

187.

The Court therefore reserves judgment as to the validity of the government's

withholdings (other than those noted in Parts B.1 and B.2).  The Court directs the government to

paginate all redacted pages in the three unpaginated releases so that the Court can match

withholdings to <u>Vaughn</u> Index entries.  The Court further directs the government to provide a

corrected <u>Vaughn</u> Index or additional declarations to address the inaccuracies and

inconsistencies described above.

C.  <u>Department of State Record</u>

Finally, the Court grants the government's summary judgment motion as to the record

referred to the Department of State.  In its previous opinion, the Court requested clarification

about whether the second page, in a two-page record referred to the State Department,

"remain[ed] to be produced or was withheld pursuant to a privilege."  Op at 20.  OEO has since

clarified.  Ms. McCoy explained that the two pages in the State Department referral were a

verbal notice and a photocopy of an envelope.  Second McCoy Decl. ¶ 26.  Initially, the State

Department processed only the verbal notice and issued it to Sarras with redactions.  <u>Id.</u> ¶ 27;

Crim. Div. <u>Vaughn</u> Index at 9.  After the Court's August 2021 opinion, OEO requested that the

State Department process the envelope.  Second McCoy Decl. ¶ 27.  The State Department

complied, and OEO produced the envelope to Sarras without redactions.  <u>Id.</u>; Pl.'s Cross Mot.

Summ. J., Ex. 2.4 at 1.  Since the government has now produced the second page, it is entitled to

summary judgment as to that record.  <u>See</u> <u>Perry</u>, 684 F.2d at 125 ("[H]owever fitful or delayed

the release of information under the FOIA may be, once all requested records are surrendered, federal courts have no further statutory function to perform.").

## IV.   Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that [72] Defendant's Motion for Summary Judgment is **GRANTED** in part;

**ORDERED** that [78] Plaintiff's Cross-Motion for Summary Judgment is **DENIED** in part;

**ORDERED** that the government shall, by November 13, 2023, paginate and release to Sarras the pages from previous releases that were unpaginated and were redacted in part or in full; by November 13, 2023, the government shall also submit a supplemental memorandum in support of summary judgment, accompanied by a revised <u>Vaughn</u> Index or supplemental declarations, addressing the issues on which the Court reserved judgment; Sarras shall file any response to the government's memorandum by December 13, 2023; and the government shall file any reply by January 3, 2024.

**SO ORDERED.**


_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  <u>September 27, 2023</u>