UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

DONATOS SARRAS,                          )
                                         )
        Plaintiff,                       )
                                         )
    v.                                   )          Civil Action No. 19-0861 (CRC)
                                         )
DEPARTMENT OF JUSTICE,                   )
                                         )
        Defendant.                       )
_____ )

**<u>DEFENDANT'S SECOND RENEWED MOTION FOR SUMMARY JUDGMENT</u>**

Pursuant to Federal Rule of Civil Procedure ("Rule") 56, Defendant the Department of Justice ("Department"), renews its motion for summary judgment on Plaintiff's Freedom of Information Act ("FOIA") claims challenging the Department responses to two FOIA requests submitted in 2016 and 2018.  This Court has already granted the Department partial summary judgment.  Specifically, the Court found that the Office of Enforcement Operations (the "Office") conducted an adequate search in response to plaintiff's requests (*see* Mem. Op. of Sept. 27, 2023 (ECF No. 82) at 7-13 ("Mem. Op.")), that it properly released a record including an envelope referred to the Department of State (*see* Mem. Op. at 27-28), that the redacted information and records designated as Documents 1, 8, 37, 571, and 572 fall within the deliberative process privilege of Exemption 5 (*see* Mem. Op. at 14-20); and that pursuant to Exemption 6, the Office properly withheld the names and identifying information of lower-level International Prisoner Transfer Unit employees in the records released from December 2021 to December 2022 (*see* Mem. Op. at 20-22).

However, the Court declined to grant summary judgment in total because of three issues that precluded summary judgment: (1) some of the Office's productions were not paginated and

contained fully redacted pages with no claimed exemptions, (2) the Office failed to clarify which documents from its February 2022 release were duplicates of an earlier release, and (3) the government did not adequately explain which documents the Federal Bureau of Investigation ("FBI") reviewed and redacted.  Mem. Op. at 22.  The Department has now remedied those areas of concern in this motion for renewed summary judgment, its supplemental declaration, and updated *Vaughn* Index.  In support of this Motion, the Department respectfully refers the Court to the accompanying Memorandum of Points and Authorities, and Statement of Material Facts to which there is no Genuine Issue, as well as the attached declarations, *Vaughn* index, and exhibits. A proposed order consistent with this Motion is attached hereto.

Dated: February 16, 2024
      Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar # 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By:   */s/ Patricia K. McBride*
    PATRICIA K. MCBRIDE
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    202-252-7123

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

|  |  |  |
|---|---|---|
| DONATOS SARRAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 19-0861 (CRC) |
| | ) | |
| DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

---

**DEFENDANT'S STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE DISPUTE**

Pursuant to Local Civil Rule 7(h)(1), Defendant hereby submits the following Statement of Material Facts as to Which There is no Genuine Dispute in this action brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 and the Privacy Act ("PA"), 5 U.S.C. § 552a.

1.      On September 27, 2023, this Court issued an order granting in part the Defendant's Motion for Summary Judgment. *See* ECF No. 87 ("Op. and Order").

2.      Christina Butler ("Butler Decl.") the Chief of the Freedom of Information Act ("FOIA")/Privacy Act ("PA") Unit in the Office of Enforcement Operations ("OEO") in the Criminal Division ("Criminal Division") of the Department of Justice ("Department") drafted a declaration, which supplements and incorporates by reference the declarations of Amanda Marchand Jones dated September 14, 2020 ("Jones Decl.," ECF Nos. 28 and 33), dated February 12, 2021 ("Second Jones Decl.," ECF No. 39), dated December 22, 2021 ("Third Jones Decl.," ECF No. 48) and the declarations of Traci McCoy dated January 9, 2023 ("McCoy Decl.," ECF No. 72) and dated May 5, 2023 ("Second McCoy Decl.," ECF No. 83) in support of the Department's Motion for Summary Judgment.  *See* Butler Decl. ¶¶ 1-2, 7.  Ms. Butler supervises

thirteen employees who respond to requests for access to Criminal Division records. *Id*. ¶ 2-3. In addition, she is responsible for, among other things, supervising the handling of the FOIA and PA requests processed by the Criminal Division, FOIA/PA Unit. *Id*. Additionally, Butler is responsible for providing litigation support and assistance to Assistant United States Attorneys and Civil Division Trial Attorneys who represent the Criminal Division in lawsuits filed in federal court under the FOIA and/or the PA stemming from requests for Criminal Division records. *Id*.

2.    The Court granted summary judgment as to the adequacy of the Defendant's search in response to Plaintiff's OEO Requests. *See* ECF No. 87 at 13 - the Court's Order and Opinion dated September 27, 2023.

3.    The Court also granted summary judgment as to information and records withheld pursuant to Exemption 5 (Documents 1, 8, 37, 571, and 572) and 6 (names and identifying information of lower-level IPTU employees). *Id*. at 20.

4.    The Court ordered that the Defendant shall: (1) paginate previous releases and explain the fully redacted pages that did not contain claimed exemptions; (2) clarify which documents from the February 16, 2022 interim response were duplicates of an earlier release; and (3) adequately explain which documents the Federal Bureau of Investigation ("FBI") reviewed and redacted. *Id*. 23.

5.    In response to this Court's previous August 5, 2021, order, ECF No. 44, the Criminal Division conducted a supplemental search and issued four releases dated December 22, 2021, February 16, 2022, April 18, 2022, and December 12, 2022. *See* McCoy Decl. ¶¶ 15-36.

6.    Only the December 12, 2022, release was paginated. Butler Decl.¶ 11. The pagination bates label for the December 12, 2022, release is: Supplemental Response Page 1-15. *Id*. The page numbers correspond with the Revised Supplemental *Vaughn* index. *Id*. The

remaining three supplemental responses have been paginated in accordance with the Court's Opinion and Order. *Id.* ¶ 12.  The page numbers of the three responses correspond with the Revised Supplemental *Vaughn* index for each respective response.  *Id.*  The page numbers for each of the responses are as follows:

> December 12, 2022 – Supplemental Response Page 1-15
>
> December 22, 2021 – Interim Response Page No. 1-100
> February 16, 2022 – Interim Response Page No. 1-693[1]
> April 18, 2022 – Interim Response Page No. 1-92

7.      All pages in the responses dated December 22, 2021, April 18, 2022, and December 12, 2022, now contain exemption markings where information is redacted in part or in full.  *Id.* ¶ 13.

8.      The February 16, 2022, response contained fully redacted pages that did not indicate the exemptions claimed on each respective page. *Id.* ¶ 14.  The fully redacted pages were either pages referred to the Federal Bureau of Prisons ("BOP") for processing and response to the Plaintiff, pages referred to the Department of State ("DOS") for processing and response to the Plaintiff, or duplicates of previously processed pages that were either redacted in part or in full. *Id.*

9.      All fully redacted pages in the February 16, 2022, response have now been paginated and appropriately marked with exemptions claimed or referral markings.  *Id.* ¶ 15.  The corresponding Revised Supplemental *Vaughn* index includes notations indicating the pages that were referred to BOP and DOS, and the pages that are duplicates of previously processed pages. *Id.*

---

[1]      As noted in the Revised Supplemental *Vaughn* index Page 694 was removed from this packet.  It appears to have been a non-responsive document that was inadvertently incorporated into this response and improperly marked as a Federal Bureau of Prisons referral page.  Accordingly, the February 16, 2022, response only contains 693 pages.

10.     For pages that remain redacted in full, a small section of the redaction was lifted at the bottom of each page to reflect the pagination.  *Id*. ¶ 16.

11.     On February 1, 2024, in accordance with this Court's Opinion and Order, the Criminal Division FOIA/PA Unit sent the Plaintiff, via certified mail, the paginated pages from the three supplemental releases that were previously unpaginated and were redacted in part or in full.  *Id*. ¶ 17.

12.     The November 22, 2019, final response totaled 378 pages.  *Id*. ¶ 19.  Specifically, 139 pages were released in full, 85 pages were redacted in part, and 33 pages were redacted in full.  *See* Second Jones Decl. ¶ 7.  Additionally, two pages were referred to DOS and 119 pages were referred to BOP for appropriate processing and direct response to Plaintiff.  *See* Second Jones Decl. ¶ 7.

13.     The February 16, 2022, response, totaled 683 pages.  Butler Decl. ¶ 20.  The agency released 164 pages to Plaintiff in full.  *Id*.  A total of 525 pages were duplicate pages that were redacted in part or in full as part of the November 22, 2019, final response, and four additional pages[2] remain redacted in full that are not duplicates of the November 22, 2019, final response.  *Id*.

14.     The 525 duplicates pages were processed to mirror how the pages were released to Plaintiff or withheld in full in the November 22, 2019, final response.  *Id*. ¶ 21. The withheld in full duplicates contained in the February 16, 2022, response (February 16, 2022 – Interim Response Page Nos. 234, 250-252, 270, 271-273, 288-291, and 299-313) and the four pages withheld in full that were not duplicates (February 16, 2022 – Interim Response Page Nos. 36-37

---

[2]     This Court granted Defendant's Motion for Summary Judgment on two of the four pages in its September 27, 2023, Opinion and Order. Specifically, February 16, 2022 – Interim Response Pages 571-572. *See* Opinion and Order at 20.

and 571-572[3]), the total withheld in full page count for the February 16, 2022, response was 29 pages. *Id*.

15.     The Revised Supplemental *Vaughn* index has been updated to reflect all pages from the February 16, 2022, response that were redacted in part and in full. *Id*. ¶ 22.  The *Vaughn* index reflects the claimed exemption(s), the DOS and BOP referral pages, and where applicable, the corresponding duplicate *Vaughn* Document ID No. missing from the *Vaughn* index attached to Amanda Marchand Jones's declaration, dated September 14, 2020, which related to the Criminal Division FOIA/PA Unit's November 22, 2019, final response.[4]  *See* Jones Decl., ECF No. 33, Exhibit E.

16.     As reflected in the Revised Supplemental *Vaughn* index, several pages or portions of pages from the November 22, 2019, final response were duplicated more than once, in the February 16, 2022, supplemental response, including pages that were referred to BOP.  Butler Decl. ¶ 23.

17.     After reviewing the February 16, 2022, response, some of the Revised Supplemental *Vaughn* index entries pertaining to pages 202, 234, and 248-252 from the February 16, 2022, Interim Response were updated to include categories of information that were previously redacted and supported in Criminal Division FOIA/PA Unit declarations, but those notations were missing from the *Vaughn* index attached to Amanda Marchand Jones's declaration dated September 14, 2020.  *See* Jones Decl., ECF No. 33, Exhibit E.

18.     During the course of this FOIA litigation, the Criminal Division FOIA/PA Unit sent

---

[3]     This Court recently granted summary judgment as to this record. *See* Opinion and Order (September 27, 2023) at 20.

[4]     This Court granted Defendant summary judgment as to Plaintiff's International Prisoner Transfer treaty transfer request.

the FBI a total of ten pages on consultation, consisting of pages 3, 4, 5, 6-7, 8, 9-12 of the April 18, 2022, Interim Response.[5]  Butler Decl. ¶ 25.  All of these pages originated with the FBI and contained FBI information.  *Id*.

19.     Because the Criminal Division FOIA/PA Unit subsequently identified an additional forty-nine pages, consisting of pages 1, 2, 13-59 of the April 18, 2022, Interim Response, that contained some of the same FBI information reflected in the ten pages described in paragraph 18 *supra*, and related to the same information regarding a specific law enforcement technique, to ensure all FBI equities were appropriately redacted, "Per FBI" redaction markings were added to these pages.  *Id*. ¶ 26.  Upon paginating the pages, some of the claimed exemption markings were updated to clearly reflect "Per FBI" and Criminal Division FOIA/PA Unit markings, where necessary.  *Id*.  The Revised Supplemental *Vaughn* index was updated as well.  *Id*.

20.     On October 25, 2023, following notice of this Court's Opinion and Order, and to coordinate explaining which documents the FBI reviewed and to clarify redaction notations on FBI originating and non-FBI originating documents, the Criminal Division FOIA/PA Unit sent the FBI all ninety-two pages of the April 18, 2022, response for review.  *Id*. ¶ 27.  Following the FBI review, the FBI has now provided additional explanations and justifications for the release of two pages and the withholding of 47 pages in full of those records.  *Id*.

21.     The exemption claimed on April 18, 2022 – Interim Response Page 1 to protect the "Date Withdrawn," was initially inadvertently marked as Exemption 5.  *Id*. ¶ 28.  It was revised in the paginated packet to accurately reflect the exemption claimed – Exemption 7(E) "Per FBI."  *Id*.

22.     After a review of the April 18, 2022, response, the Revised Supplemental *Vaughn* index was revised to update the page numbers, redacted in part counts, redacted in full counts, and

---

[5]     *See* Declaration of Michael G. Seidel dated December 7, 2022 (ECF No. 72).

the "From" column, where necessary. *Id.* ¶ 29.  This includes an update regarding pages 12-59 in

the Revised Supplemental *Vaughn* index to address this Court's comment in its Opinion and Order

on page 26.  *Id.*

Dated: February 16, 2024    Respectfully submitted,
   Washington, DC

           MATTHEW M. GRAVES, D.C. Bar # 481052
           United States Attorney

           BRIAN P. HUDAK
           Chief, Civil Division


           By: */s/ Patricia K. McBride*
            PATRICIA K. MCBRIDE
            Assistant United States Attorney
            601 D Street, NW
            Washington, DC 20530
            202-252-7123

           *Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DONATOS SARRAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No. 19-0861 (CRC) |
| | ) |
| DEPARTMENT OF JUSTICE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S SECOND RENEWED MOTION FOR SUMMARY JUDGMENT**

This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 and

pertains to Plaintiff Donatos Sarras's requests for records maintained by the Defendant the

Department of Justice ("Department").

This Court has previously granted the Department summary judgment as to the adequacy

of its search (*see* Mem. Op. of Sept. 27, 2023 (ECF No. 82) at 7-13 ("Memorandum Opinion"))

and the Department's application of Exemptions 5 and 6. *Id*. at 20, 22.  Further, the Court granted

the government's summary judgment motion as to the record referred to the Department of State

as the Office of Enforcement Operations (the "Office") produced that record to Plaintiff without

redactions.  *Id*. at 27.

In its Memorandum Opinion, the Court found three issues precluding a final judgment in

this case: (1) some of the Office's productions were not paginated and contained fully redacted

pages with no claimed exemptions, (2) the Office failed to clarify which documents from its

February 2022 release were duplicates of an earlier release, and (3) the Department has not

adequately explained which documents the Federal Bureau of Investigation ("FBI") reviewed and

redacted.  *Id*.  As a result, the Court ordered the Department to paginate and release to Plaintiff the

pages from previous releases that were unpaginated and were redacted in part or in full, submit a supplemental memorandum in support of summary judgment, accompanied by a revised *Vaughn* Index or supplemental declarations addressing the issues on which the Court reserved judgment. *Id*. at 28.

The Department has completed those tasks and demonstrated in the accompanying declarations and *Vaughn* index that the Department has disclosed all non-exempt responsive records. Thus, there is no genuine issue as to any material fact, and the Department is entitled to judgment as a matter of law.

## STATEMENT OF FACTS

The Department hereby incorporates the Statement of Material Facts as to Which There is no Genuine Dispute ("Def. Stmt."), and the declarations and exhibits referenced therein, filed contemporaneously with this brief.

## LEGAL STANDARDS

Summary judgment is appropriate when the pleadings and evidence "show[] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact is one that "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Id*.

The "vast majority" of FOIA cases are decided on motions for summary judgment. *See Media Rsch. Ctr. v. Dep't of Just.*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment."); *Citizens for Resp. & Ethics in Wash. ("CREW") v. Dep't of Lab.*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007). To meet its burden, a defendant may rely on reasonably detailed and non-conclusory declarations. *See McGehee v. CIA.*, 697 F.2d 1095, 1102 (D.C. Cir. 1983); *Media Rsch. Ctr.*, 818 F. Supp. 2d at 137. That is,

> [T]he Court may award summary judgment solely on the basis of information provided . . . in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'

*CREW*, 478 F. Supp. 2d at 80 (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)). Thus, once the court determines that an agency has released all non-exempt material, it has no further judicial function to perform under the FOIA and the FOIA claim is moot. *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982); *Muhammad v. U.S. Customs & Border Prot.*, 559 F. Supp. 2d 5, 7-8 (D.D.C. 2008). Accordingly, summary judgment is appropriate in a FOIA action, such as this one, where the pleadings, together with the declarations, demonstrate that there are no material facts in dispute and the requested information has been produced or is exempted from disclosure; and the agency, as the moving party, is entitled to judgment as a matter of law. Fed. R Civ. P. 56(a); *accord Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001); *Fischer v. Dep't of Just.*, 596 F. Supp. 2d 34, 42 (D.D.C. 2009) ("[S]ummary judgment may be granted to the government if the agency proves that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester" (internal quotation marks and citation omitted)).

**ARGUMENT**

**I.     The Department Has Paginated Its Release and Clarified Which Documents From Its February 2022 Release Were Duplicates.**

The Department has responded to the Court's concerns in its Memorandum Opinion dated September 27, 2023.  *See generally* Butler Decl.; Updated *Vaughn* Index.  Specifically, the Department resolved the issue of no pagination of records by paginating all supplemental pages and marking on each page which FOIA Exemption was used in each page of records.  *See* Butler Decl. ¶¶ 9-28.  After numbering the pages, the claimed exemption markings were updated to clearly reflect "Per FBI" and Criminal Division FOIA Unit markings, where necessary.  *Id*. ¶ 26. The Revised Supplemental *Vaughn* index was updated as well to contain accurate page numbers and to clearly identify FOIA Exemptions applied to the records.  *Id*.

The Department reviewed the four supplemental responses in this case and determined that only the December 12, 2022 (*see* Suppl. Vaughn at 24-25), supplemental release was paginated. *See* Butler Decl. ¶ 11.  The December 12, 2022, supplemental release included labels indicating Supplemental Response Page 1 to 15.  *Id*.  These page numbers only correspond with the Revised Supplemental *Vaughn* index.  *Id*.

The Department has now paginated the remaining three supplemental responses in accordance with the Court's Opinion and order.  *Id*. ¶ 12.  The page numbers of the three responses correspond with the Revised Supplemental *Vaughn* Index for each respective response and are listed as follows: (1) the December 22, 2021 (*see* Suppl. *Vaughn* at 4-18), release is labeled, Interim Response Page Nos. 1 to 100; (2) the February 16, 2022 (*see* Suppl. *Vaughn* at 1-18), release is labeled, Interim Response Page Nos. 1 to 693; and (3) the April 18, 2022 (*see* Suppl. *Vaughn* at 18-24), release is labeled, Interim Response Page Nos. 1 to 92.  *Id*.  All pages in the responses dated December 22, 2021, April 18, 2022, and December 12, 2022, contain exemption markings

where information is redacted in part or in full.  *Id*. ¶ 13.  The February 16, 2022, response contained fully redacted pages but did not indicate the exemptions claimed on each respective page.  *Id*. ¶ 14.  The fully redacted pages were either pages referred to the Bureau of Prisons for processing and a direct response to Plaintiff, pages referred to the Department of State for processing and a direct response to Plaintiff, or duplicates of previously processed pages that were either redacted in part or in full.  *Id*.  All fully redacted pages in the February 16, 2022, response have now been paginated and appropriately marked with exemptions claimed or referral markings.  *Id*. ¶ 15.  The corresponding Revised Supplemental *Vaughn* index now has notations indicating the pages that were referred to the Bureau of Prisons and State Department, and the pages that are duplicates of previously processed pages.  *Id*.

On February 1, 2024, in accordance with the Court's Memorandum Opinion, the Criminal Division's FOIA Unit sent the Plaintiff, via certified mail, the paginated pages from the three supplemental releases.  *Id*. ¶ 17.  The February 16, 2022, response contained 525 pages that were previously redacted in part or in full.  Counting the withheld in full duplicates contained in the February 16, 2022, response (Interim Response Page Nos. 234, 250-252, 270, 271-273, 288-291, and 299 to 313) and the four pages withheld in full that were not duplicates (Interim Response Page Nos. 36 to 37 and 571 to 572), the total withheld in full page count for the February 16, 2022, response was thirty-one pages.  *Id*.  The Revised Supplemental *Vaughn* index was updated to reflect all pages from the February 16, 2022, response that were redacted in part and in full.  *Id*. ¶ 22.  Accordingly, the *Vaughn* index reflects the claimed exemptions, duplicate State Department and Bureau of Prison referral pages, and where applicable, the corresponding duplicate *Vaughn* Document identification number from the *Vaughn* index attached to Amanda Marchand Jones's

declaration, dated September 14, 2020, which related to the Criminal Division's November 22, 2019, final response. *See* Jones Decl., ECF No. 33.

As now reflected in the Revised Supplemental *Vaughn* index, several pages or portions of pages from the November 22, 2019, prior release were duplicated more than once, in the February 16, 2022, response, including pages that were referred to Bureau of Prisons. *Id*. ¶ 23. After reviewing the February 16, 2022, response, the Revised Supplemental *Vaughn* index entries specifically pertaining to pages 202, 234, and 248 to 252 from the February 16, 2022, response, were updated to include categories of information that were previously redacted and supported in Criminal Division's declarations but missing from the previous *Vaughn* index attached to Amanda Marchand Jones's declaration dated September 14, 2020. *Id*. ¶ 24; *see also* Jones Decl., ECF No. 33, Ex. E. During this case, the Criminal Division sent the FBI a total of ten pages on consultation, consisting of pages 3, 4, 5, 6-7, 8, 9-12 of the April 18, 2022, Interim Response. *Id*. ¶ 25. All of these pages originated with the FBI and contained FBI information. *Id*.

Because the Criminal Division subsequently identified an additional forty-nine pages, consisting of pages 1, 2, 13-59, that contained some of the same FBI information reflected in the ten pages described above, and related to the same claimed exemption for the use of a specific law enforcement technique, "Per FBI" redaction markings were added to these pages, to ensure all FBI equities were appropriately redacted. *Id*. ¶ 26. After numbering the pages, some of the claimed exemption markings were also updated to clearly reflect "Per FBI" and Criminal Division's markings where necessary. *Id*. The Revised Supplemental *Vaughn* index reflects this update as well. *Id*.

On October 25, 2023, following the Memorandum Opinion, and to coordinate explaining which documents the FBI reviewed and clarify redaction notations on FBI originating and non-

FBI originating documents, the Criminal Division sent the FBI all ninety-two pages of the April 18, 2022, response for review.  *Id*. ¶ 27.  Following the FBI's review, the FBI provided additional explanations and justifications for the release of two pages and the withholding of forty-seven pages in full of Criminal Division originated records.  *Id*; *see also* updated *Vaughn* Index. Moreover, the exemption claimed on April 18, 2022, Interim Response Page 1 to protect the "Date Withdrawn," was initially inadvertently marked as Exemption 5.  *Id*.  It was revised in the paginated packet to accurately reflect the exemption claimed—Exemption 7(E) "Per FBI."  *Id*.

After a review of the April 18, 2022, response, the Supplemental *Vaughn* index was revised to update the page numbers, redacted in part counts, redacted in full counts, and the "From" column where necessary.  *Id*. ¶ 29.

In addition to the two consult requests from the Department's Criminal Division consisting of ten pages delineated in the First Seidel Declaration, there were forty-nine pages of Criminal Division-originated records which were not previously provided to the FBI for review or consultation prior to the Department's initial motion for summary judgment. *See* 2d Seidel Decl. ¶ 2.  The Criminal Division asserted these withholdings on the FBI's behalf, without consultation; thus, the FBI did not have an opportunity to defend these withholdings. *Id*.  To address the inconsistencies outlined in the Memorandum Opinion, the FBI coordinated and clarified the outstanding issues with the Criminal Division.  *Id*.  The FBI requested that the Criminal Division release two pages in part and withhold in full forty-seven pages.  *Id*.  The supplemental *Vaughn* Index and declarations have been updated to address the Court's concerns and reflects necessary markings. See generally Revised Supplemental *Vaughn* index and Butler Declaration.

## II.     **DOJ and FBI Properly Invoked FOIA Exemptions to Plaintiff's Requests.**

"[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'"  *Media Research Ctr.*, 818 F. Supp. 2d at 137 (quoting *Larson v. U.S.*

*Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009)).  The *Vaughn* declarations and indices provide the Court and Plaintiff with an explanation of the bases for DOJ and FBI withholdings.  Because the responsive records have been properly withheld from Plaintiff, summary judgment should be entered in favor of DOJ.  DOJ Properly Withheld Information under Exemptions 5, 6, 7(C), 7(D), 7(E) and 7(F)[6] of the FOIA, 5 U.S.C. § 552(b)(5), (b)(6), (b)(7)(C), (b)(7)(D), (b)(7)(E) and (b)(7)(F).

**A.      The Department and FBI Satisfied the Standards for Exemptions 6 and 7(C).**

FOIA Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  The term "similar files" is broadly construed and includes "Government records on an individual which can be identified as applying to that individual." *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *Lepelletier v. FDIC*, 164 F.3d 37, 47 (D.C. Cir. 1999) ("The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual.").  Exemption 7(C) similarly exempts from disclosure "records or information compiled for law enforcement purposes [when disclosure] could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

Exemption 7(C) is more protective of privacy in that it permits withholding of records when disclosure would constitute an "unwarranted" invasion of privacy; whereas Exemption 6

---

[6] Although the Criminal Division's Revised Supplemental *Vaughn* index withheld information pursuant to Exemption 7(F) on pages, those pages were duplicative of the Criminal Division's November 22, 2019, prior release, which the Court upheld.  *See* ECF No. 44 – Op. at 13 n. 11 (Court held that Sarras did not challenge the legitimacy of the government's withholdings under Exemptions 3, 6, and 7, *see* 5 U.S.C. § 552(b)(3), (b)(6), (b)(7), aside from pointing out what he perceives to be typos and oversights in the government's indexes.  As the government sufficiently justified the applicability of these exemptions in its affidavits and corresponding *Vaughn* indexes, it is entitled to summary judgment on this subset of withholdings).

requires a "clearly unwarranted" invasion of privacy to justify nondisclosure. *Kleinert v. Bureau of Land Mgmt.*, 132 F. Supp. 3d 79, 91 (D.D.C. 2015). Therefore, "when an agency cites both exemptions to justify a set of redactions, courts often first analyze those redactions under Exemption 7(C), turning to Exemption 6 only if necessary." *Id.* In this case, the Department and FBI satisfied both the Exemption 6 and 7(C) standards.

The analysis of both Exemption 6 and Exemption 7(C) requires courts to "engage in a balancing test to determine whether the public interest in disclosure is outweighed by a significant private interest in non-disclosure." *Jett v. FBI*, 241 F. Supp. 3d 1, 12 (D.D.C. 2017). But in order to trigger the balancing of public interests against private interests, a FOIA requester must (1) "show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake," and (2) "show the information is likely to advance that interest." *Boyd v. Crim. Div.,* 475 F.3d 381, 366 (D.C. Cir. 2007). It is the "interest of the general public, and not that of the private litigant" that the court considers in this analysis. *Ayuda, Inc. v. Fed. Trade Comm'n*, 70 F. Supp. 3d 247, 274 (D.D.C. 2014). Further, "the requester must establish more than a bare suspicion in order to obtain disclosure." *Goldstein v. Treasury Inspector Gen. for Tax Admin.*, 172 F. Supp. 3d 221, 232 (D.D.C. 2016) (quotation marks omitted).

Here, the FBI asserted Exemptions 6 and 7(C) to protect the name and other identifying information of a third-party individual who provided information to the FBI during an FBI investigation.[7] *See* 2d Seidel Decl. ¶ 10. The identifying information of, and information provided by (outside of its investigative use), this third-party individual appears within the records that the FBI reviewed because this individual willingly divulged information relevant to the FBI's

---

[7] Identifying information includes a name, date of birth, and social security number. This information was withheld on pages 1 and 13 to 59 of the April 18, 2022, response portion of the Criminal Division's supplemental release.

investigative efforts. *Id.* Plaintiff did not provide a privacy waiver from this third-party authorizing release of his or her information, nor did Plaintiff supply proof of death; therefore, this individual maintains substantial and legitimate privacy interests in not having their cooperation with or connection to the FBI disclosed. *Id.* Considering that the FBI is an investigative and intelligence agency, disclosure of this individual's name or other identifying information in connection with FBI records carries an extremely negative connotation. *Id.*

The names of law enforcement officers (and support staff) who work on criminal investigations have traditionally been protected against disclosure as well as the names and other identifying information of third parties who provided information and to non-FBI federal government personnel. *Richardson v. Dep't of Just.,* 730 F. Supp. 2d 225, 236 (D.D.C. 2010) ("Redaction of the names of federal and local law enforcement personnel and support staff found in law enforcement records has routinely been upheld"); *see also Keys v. Dep't of Homeland Sec.,* 510 F. Supp. 2d 121, 128 (D.D.C. 2007) (stating that a career public servant is "not stripped of every vestige of personal privacy, even with respect to the discharge of his official duties. Public identification of any of these individuals could conceivably subject them to harassment and annoyance in the conduct of their official duties and in their private lives." (alterations and quotation marks omitted)). The Criminal Division protected information within the following records categories pursuant to the Exemptions 6 and 7(C) as described in the attached *Vaughn* Index: (1) names of FOIA requesters; (2) names, and other identifying information of a third-party individual who provided information to the FBI during its investigation. *See* Vaughn Index at 1-6; *see also* Scarantino Decl. ¶¶ 16-19; Jones Decl. ¶ 36-40, ECF No. 33.

The identifying information of, and information provided by (outside of its investigative use), this third-party individual appears within the records that the FBI reviewed because this

individual willingly divulged information relevant to the FBI's investigative efforts.  *Id*. at 11. Considering that the FBI is an investigative and intelligence agency, disclosure of this individual's name or other identifying information in connection with FBI records carries an extremely negative connotation.  *Id*.

Releasing information pertaining to these individuals would place each of them in a position where they will suffer undue invasions of privacy, harassment, and humiliation from disclosure of their identities in a law enforcement investigatory file.  *See Petrucelli v. Dep't of Just.*, 51 F. Supp. 3d 142 (D.D.C. 2014) ("It is surely beyond dispute that the mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation.") (quoting *Fitzgibbon v. CIA*, 911 F.2d 755, 768 (D.C. Cir. 1990)); *accord Dunkelberger v. Dep't of Just.*, 906 F.2d 779, 781 (D.C. Cir. 1990); *Computer Pros. for Soc. Resp. v. Secret Serv.*, 72 F.3d 897, 904 (D.C. Cir. 1996).  The Criminal Division determined that the privacy interests in this information is substantial (more than *de minimis*) and that the release of such information as it pertains to federal employees could subject them to harassment and unwanted publicity, which may limit their effectiveness in handling their respective responsibilities.  McCoy Decl. ¶¶ 56-59.  Thus, the Department determined that these individuals have, in accordance with Exemptions 6 and 7(C), a substantial privacy interests in not having their identities disclosed.

The Department properly balanced the privacy interests of the individual mentioned in the document against any public interest in disclosure.  In asserting these exemptions in this case, each piece of information was scrutinized by the Department to determine the nature and strength of the privacy interest of any individual whose name or identifying information appeared in the documents at issue. McCoy Decl. ¶ 59.  The FBI also balanced the privacy interests of these

individuals and concluded that no public interest would be served by disclosing the identity of these FBI professional staff members to the general public because their identities would not, themselves, significantly increase the public's understanding of the FBI's operations and activities. Seidel Decl. ¶ 17.

After balancing the personal privacy interests in non-disclosure against the public interests in disclosure, the Department and FBI determined that the individuals' privacy interests outweighed any public interest in disclosure and concluded that the information should be withheld under the personal privacy exemptions. Every effort was made to release all segregable information contained in these records without invading the privacy interests of these individuals. *Id*.; Seidel Decl. ¶ 40. Therefore, the Department has established that disclosure of this information would result in an unwarranted invasion of privacy under Exemption 7(C) and would also result in a clearly unwarranted invasion of privacy under Exemption 6.

**B.      FBI Properly Withheld Information Under Exemption 7(D)**

FOIA Exemption 7(D) protects from disclosure those records or information compiled for law enforcement purposes that could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis, and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation . . . information furnished by a confidential source. 5 U.S.C. § 552(b)(7)(D). There is no general "presumption that a source is confidential within the meaning of [FOIA] Exemption 7(D) whenever [a] source provides information [to a law enforcement agency] in the course of a criminal investigation." *Dep't of Just. v. Landano*, 508 U.S. 165, 181 (1993). Rather, a source's confidentiality must be determined on a case-by-case basis. *Id*. at 179–80. "A source is confidential within the meaning of [E]xemption 7(D) if the source 'provided information under

an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred.'" *Williams v. FBI*, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (per curiam) (quoting *Landano*, 508 U.S. at 170–74).

The FBI asserted Exemption 7(D) to protect the names and other identifying information of, and information provided by, third parties who provided information under an implied assurance of confidentiality, i.e., a situation where confidentiality can be inferred. Butler Decl. ¶ 14. These third parties not only provided information concerning the activities of subjects of investigative interest to the FBI, but they also risked harm when cooperating in the investigation described in the records because they were within the orbit of violent suspected criminals and such criminals (in the FBI's experience) typically seek to deter cooperation with law enforcement through reprisal. *Id*. ¶¶ 25, 26. Such reprisal can take many forms including, but not limited to, defamation of the source's character among peers and family; economic reprisal (deprivation of employment or business opportunities); violent threats aimed at instilling fear and doubt; and violence, such as physical harm, or murder. *Id*. ¶ 26. These individuals cooperated with the FBI solely because they expected that their identity and the information provided (outside of its investigative use) would be held in confidence. *Id*. ¶ 27. Considering: (1) the singularity of the information provided and the likelihood that these individuals could be identified by those familiar with the events described through release of the information; (2) the proximity of these individuals to the investigative subjects and the events described; and (3) the nature of the criminal acts described, the FBI properly withheld this information pursuant to Exemption 7(D). *Id*. ¶ 25.

## C.    FBI Properly Withheld Information Under Exemption 7(E)

"Exemption 7(E) protects from disclosure law enforcement records 'to the extent that such information would disclose techniques and procedures for law enforcement investigation or

prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.'" *Skinner v. U.S. Dep't of Just.*, 893 F.Supp.2d 109, 112 (D.D.C. 2012) (quoting 5 U.S.C. § 552(b)(7)(E)).   Within the records at issue, the FBI asserted Exemption 7(E) to non-public investigative techniques and procedures utilized by the FBI to pursue its law enforcement function and to non-public details about techniques and procedures that are otherwise known to the public.  *See* Seidel Decl. ¶ 29. Specifically, the FBI asserted Exemption 7(E) to withhold information pertaining to the investigative focus of a specific investigation, the types and date of an investigation, sensitive investigative file numbers, and FBI secure fax numbers and internal phone numbers.  *Id*.  The government therefore meets the threshold requirements under FOIA Exemption 7.  *See* 5 U.S.C. § 552(b)(7).  The first prong of FOIA Exemption 7(E)—which allows the government to withhold "techniques and procedures for law enforcement investigation"—is a categorical bar, and it need not show how disclosure of records containing techniques and procedures could reasonably be expected to risk circumvention of the law.  The D.C. Circuit does not agree.  It has noted that it "has applied the 'risk circumvention of the law' requirement both to records containing guidelines and records containing technique and procedures."  *Pub. Emp. for Env't Resp. v. Int'l Boundary & Water Comm'n*, 740 F.3d 195, 204 n.4 (D.C. Cir. 2014).  The Circuit has also concluded, however, that "Exemption 7(E) sets a relatively low bar for the agency to justify withholding." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011).  "Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law."  *Id*. (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009).

The FBI protected information pertaining to the type and dates of the investigation referenced in the records at issue in this case pursuant to FOIA Exemption 7(E).  *See* Seidel Decl. ¶ 23.  Specifically, some of the information withheld, when referenced in connection with actual investigation and not in general discussion pertains to the type of investigation, whether it was a "preliminary" or "full" investigation and the dates the FBI initiated the investigation.  *Id*. Disclosure of this information would inform criminals the type of activities that would trigger a full investigation as opposed to a preliminary investigation, and the particular dates the investigation covers.  *Id*.  Additionally, this information would also give criminals valuable insight into how the FBI develops its investigation.  *Id*.  Release of this information would allow investigative subjects to predict FBI investigative strategies and adjust their behavior accordingly. *Id*.  Moreover, revealing a specific activity in general warrants investigation could likewise cause individuals to adjust their conduct to avoid investigative scrutiny by the FBI.  *Id*.

Within this category, the FBI also protected the categorization of sensitive FBI investigation. *Id.* ¶ 24.  The specific type of investigation pursued to investigate certain matters is often highly sensitive.  *Id*.  This is because internal FBI policies establish which types of investigative techniques are authorized for use in certain types of investigations.  *Id*.  Thus, revealing how investigations are categorized by FBI personnel would reveal the investigative "toolbox" available to the FBI in certain situations.  *Id*.  Releasing the investigation type would allow criminals to predict the FBI's responses and investigative strategies when pursuing certain types of criminal behavior/national security threats.  *Id*.  Such a release would enable criminals to stay one step ahead of FBI investigators and enable them to circumvent the law. Furthermore, revealing this information would also show the types of criminal behavior and/or intelligence discovered by the FBI that predicated the initiation of the particular investigation type.  *Id*.  This

could potentially reveal to criminals and national security threats key information about the FBI's intelligence sources and methods or the FBI's capabilities to gather evidence of potential criminal activities through various investigative techniques. *Id*. Disclosure could thus reveal key information about the FBI's investigative capabilities, allowing criminals to educate themselves on how they might avoid detection and/or disruption of their activities by FBI investigators. *Id*.

In summary, disclosure of information related to the type and timing of the investigation could enable criminals to time and structure their illegal activities accordingly to circumvent the FBI's attempts to enforce federal laws; therefore, the FBI has properly withheld this information pursuant to Exemption 7(E). *Id*.

## D.   The Department Properly Withheld Information Under Exemption 7(F)

FOIA Exemption 7(F) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). Although this exemption applies to information that is also subject to the protection of Exemption 7(C), there is no balancing required for the use of Exemption 7(F). *See Shores v. FBI*, 185 F. Supp. 2d 77, 85 (D.D.C. 2002). Courts have tended to construe Exemption 7(F) broadly and give substantial deference to the custodial agency's determination that such a risk exists and warrants withholding of documents. *See Living Rivers, Inc. v. Bureau of Reclamation*, 272 F. Supp.2d 1313, 1321 (D. Utah 2003) (court should defer to agency's assessment of danger); *Garcia v. Dep't of Just.*, 181 F. Supp. 2d 356, 378 (S.D.N.Y. 2002) ("In evaluating the validity of an agency's invocation of Exemption 7(F), the court should 'within limits, defer to the agency's assessment of danger.'") (quoting *Linn v. Dep't of Just.*, Civ. A. No. 92-1406, 1995 WL 631847, at *9 (D.D.C. Aug. 22, 1995)).

Here, the Department and its Bureau of Prisons properly employed Exemption 7(F), in conjunction with Exemption 7(C), to withhold the identities of other detainees who were to be kept separate from Plaintiff while he was in custody. Jones Decl. ¶¶ 32-33, *Vaughn* Index. Exemption 7(F) encompasses records or information for law enforcement purposes if their disclosure could reasonably be expected to endanger the life or physical safety of an individual. 5 U.S.C. § 552(b)(F). Indeed, this very type of information has been found to have been properly withheld by the Department in the past. *See, e.g.*, *Adionser v. Dep't of Just.,* 811 F. Supp. 2d 284, 301 (D.D.C. 2011) (protecting identities of "special agents, law enforcement officers, government employees and confidential sources"); *Jimenez v. FBI,* 938 F. Supp. 21, 30-31 (D.D.C. 1996) (holding that disclosure of names of special agents, supervisors, and local law enforcement officers, could result in "physical attacks, threats, or harassment").

Here, the Criminal Division withheld portions of Plaintiff's Presentence Investigation Report and the related Statement of Reasons. Jones Decl. ¶ 42. These documents include details pertaining to Plaintiff's underlying criminal charges of sexual exploitation of a minor and possession of child pornography. *Id*. Plaintiff is currently incarcerated. *Id*. For safety reasons, the Plaintiff may not retain his Presentence Investigation Report and the related Statement of Reasons. *Id*. If other inmates subsequently obtained this material, Plaintiff faces an increased risk of harm from the other inmates within the confines of a federal correctional facility. *Id*. Therefore, the Criminal Division has properly withheld the information pursuant to Exemption 7(F). *Id*.

In each instance where information processed by the Criminal Division was withheld from Plaintiff pursuant to Exemption 7(F), only that information which could reasonably be expected to endanger the life or physical safety of any individual was withheld, and it is reasonably foreseeable that disclosure of this information would harm the interests protected by this provision.

*Id*. ¶ 43. No non-exempt information was withheld pursuant to this exemption and thus further segregation was not possible. *Id*. Additionally, certain information protected by Exemption 7(F) is also within material protected under Exemptions 6 and 7(C). *Id*.

### III.   All Reasonably Segregable Material Has Been Released to Plaintiff.

Under FOIA, if a record contains information exempt from disclosure, any "reasonably segregable," non-exempt information must be disclosed after redaction of the exempt information. 5 U.S.C. § 552(b). Non-exempt portions of records need not be disclosed if they are "inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977); *Fischer*, 596 F.Supp.2d at 44. To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996); *Canning v. Dep't of Just.*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007). Moreover, the agency is not required to "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content." *Mead Data*, 566 F.2d at 261, n.55.

The FOIA Improvement Act of 2016 generally adopted the foreseeable harm standard and made it statutory, advising that agencies shall withhold information under the FOIA only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption or disclosure is prohibited by law. Butler Decl. ¶ 24. Accordingly, the FBI's analysis of records responsive under the FOIA is a two-part process. First, the FBI determines whether a record is

exempt pursuant to one or more FOIA exemptions.  *Id*.  Second, if the record is exempt pursuant to one or more FOIA exemptions, the FBI then considers whether foreseeable harm would result from disclosure of the record. For the withheld records at issue here, the FBI conducted this two-part analysis and only withheld records where it determined the withheld record met both of these criteria. *Id*.  The FBI's foreseeable harm is more fully described within each of the above coded exemption justification categories.  *Id*.

In this case, all pages of records were reviewed line-by-line and all non-exempt information was segregated and disclosed.  McCoy Decl. ¶ 67.  For records that were withheld in their entirety, either there was no reasonably segregable information, any non-exempt information amounted to essentially meaningless words or phrases, or the information also fell within information protected by another exemption, thus further segregation was not possible.  *Id*.  Each step in the handling of Plaintiff's request has been entirely consistent with standard procedures to ensure an equitable response to all persons seeking records under FOIA.  *Id*. ¶ 68.

Further, the Criminal Division coordinated with the FBI to review additional pages which were not previously consulted to the FBI.  Butler Decl. ¶ 25.  The FBI released in part two pages and withheld in full forty-seven pages.  Following its segregability review, the FBI determined that two pages could be released in part with redactions per the identified FOIA exemptions cited herein.  *Id*.  These pages include a mixture of information that was segregated for release and withheld in full because release would trigger foreseeable harm to one or more interests protected by the FOIA exemptions cited herein.  *Id*.  By contrast, the FBI determined that all the information on the withheld pages were fully covered by one or more FOIA exemptions or determined that any non-exempt information on these pages is so intertwined with exempt information that no information could be reasonably segregated for release.  *Id*.  Any further segregation of the

intertwined information would employ finite resources only to produce disjointed words, phrases, or sentences that, taken separately or together, would have minimal or no information content.  *Id*.

*     *     *

## CONCLUSION

For the foregoing reasons, the Court should enter summary judgment in the Department's favor on the remaining issues in this matter.

Dated: February 16, 2024
        Washington, DC

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar # 481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division


By:   */s/ Patricia K. McBride*
    PATRICIA K. MCBRIDE
    Assistant United States Attorney
    601 D Street, NW
    Washington, DC 20530
    202-252-7123

*Attorneys for the United States of America*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20th day of February 2024, the foregoing has been

served on Plaintiff by certified mail and addressed as follows:

DONATOS SARRAS
26739-018
TUCSON UNITED STATES PENITENTIARY
Inmate Mail/Parcels
P.O. Box 24550
TUCSON, AZ 85734

                                  /s/ Patricia K. McBride
                                  PATRICIA MCBRIDE
                                  Assistant United States Attorney
                                  601 D Street, N.W.
                                  Washington, D.C. 20530
                                  (202) 252-7123

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DONATOS SARRAS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 19-0861 (CRC) |
| | ) |
| DEPARTMENT OF JUSTICE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## [PROPOSED] ORDER

UPON CONSIDERATION of Defendant's second renewed motion for summary judgment, and the entire record herein, it is hereby

ORDERED that Defendant's motion is GRANTED;

ORDERED that summary judgment is entered in Defendant's favor on the remaining issues in this case.

This is a final appealable order.


ORDERED:


Date: _____

_____
CHRISTOPHER R. COOPER
United States District Judge