UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DONATOS SARRAS

    Plaintiff,

             v.

DEPARTMENT OF JUSTICE
CRIMINAL DIVISION,

    Defendant.

Civil Action No. 1:19-cv-861-CRC

## SECOND DECLARATION OF MICHAEL G. SEIDEL

I, Michael G. Seidel, declare as follows:

1.      I am the Section Chief of the Record/Information Dissemination Section (RIDS), Information Management Division (IMD), Federal Bureau of Investigation (FBI), Winchester, Virginia. My prior declaration, dated December 7, 2022, explained my employment history and responsibilities at the FBI. (ECF No. 72-2, hereinafter First Seidel Declaration). The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith. This declaration incorporates and supplements the First Seidel Declaration.

2.      In addition to the two consult requests from the Department of Justice, Criminal Division (DOJ CRM) consisting of ten (10) pages delineated in the First Seidel Declaration, the FBI submits this declaration to provide additional explanation on 49 pages of DOJ CRM-

originated records which were not previously provided to the FBI for review or consultation.[1] To address the inconsistencies outlined in the Memorandum Opinion and Order (ECF No. 87), the FBI coordinated and clarified the outstanding issues with DOJ CRM. The FBI requested that DOJ CRM release two pages in part and withhold in full 47 pages.[2] The FBI submits this declaration in support of Defendant's Renewed Motion for Summary Judgment to provide, in accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), the Court and Plaintiff with the FBI's justification for withholding information pursuant to FOIA Exemptions 6, 7(C), 7(D), and 7(E), 5 U.S.C. §§ 552(b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E).

### JUSTIFICATION FOR NON-DISCLOSURE UNDER THE PRIVACY ACT

3.     When an individual requests records about himself or herself, the FBI first considers the request under the Privacy Act, which generally provides individuals with a right of access to records about them maintained in government files, unless a Privacy Act exemption applies. *See* 5 U.S.C. § 552a. One such exemption is Exemption (j)(2), which exempts from mandatory disclosure systems of records "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals." 5 U.S.C. § 552a(j)(2). The FBI exempts law enforcement investigative records maintained in the FBI's

---

[1] The 49 pages at issue in this declaration were not sent to the FBI for review or consultation prior to Defendant's initial motion for summary judgment. DOJ CRM asserted these withholdings on the FBI's behalf, without consultation; thus, the FBI did not have an opportunity to defend these withholdings prior to filing this declaration. The FBI refers to the First Seidel Declaration for justification of its withholdings on the ten pages consulted to the FBI by DOJ CRM.

[2] The pages on which the FBI is withholding information are part of DOJ CRM's April 18, 2022 response as listed on the DOJ CRM *Vaughn* index. Specifically, the ten pages discussed in the First Seidel Declaration represent DOJ CRM pages 3-12. The 49 pages discussed in this declaration represent DOJ CRM pages 1, 2 and 13-59.

Central Records System (CRS) from the Privacy Act's disclosure requirements pursuant to

Exemption (j)(2). *See* 63 Fed. Reg. 8659, 8671 (Feb. 20, 1998).

4.    In response to Plaintiff's request, DOJ CRM located responsive law enforcement

records that originated with DOJ CRM and relate to investigative matters which are a part of the

FBI's mission. The information concerned an investigation of criminal activity. The FBI

coordinated and collaborated with DOJ CRM in response to DOJ CRM's request for assistance

and pursuant to the Attorney General's Guidelines for Domestic FBI Operations (AGG-DOM),

Part III.B., which state that, "the FBI may provide assistance to any federal agency in the

investigation of federal crimes …and investigative assistance to any federal agency for any other

purpose that may be legally authorized." Thus, records responsive to Plaintiff's request were

compiled as a result of the FBI's fulfillment of its law enforcement duties. Although Plaintiff

does not have access to these records under the Privacy Act, the FBI reviewed the records under

the access provisions of the FOIA to achieve maximum disclosure.

## JUSTIFICATION FOR NONDISCLOSURE UNDER THE FOIA

5.    The FBI reviewed the additional records from DOJ CRM to achieve maximum

disclosure consistent with the access provisions of the FOIA.  Every effort was made to provide

Plaintiff with all information in the public domain and with all reasonably segregable, non-

exempt information. The FBI did not withhold any reasonably segregable, non-exempt portions

from Plaintiff.  Further description of the information withheld by the FBI, beyond what is

provided in this declaration, would reveal exempt information.

### EXEMPTION 7 THRESHOLD

6.    Before an agency can invoke any of the harms enumerated in Exemption (b)(7), it

must demonstrate that the records or information at issue were compiled for law enforcement

3

purposes. Pursuant to 28 U.S.C. §§ 533-534, Executive Order 12333 as implemented by the

AGG-DOM, and 28 C.F.R. § 0.85, the FBI is the primary investigative agency of the federal

government with authority and responsibility to investigate all violations of federal law not

exclusively assigned to another agency, to conduct investigations and activities to protect the

United States and its people from terrorism and threats to the national security, and to further the

foreign intelligence objectives of the United States. Under this investigative authority, the

responsive records include information regarding cooperation between the FBI and DOJ CRM to

share criminal investigative information and thus, were created for law enforcement purposes.

EXEMPTIONS (b)(6) AND (b)(7)(C)
CLEARLY UNWARRANTED INVASION OF PERSONAL PRIVACY AND
UNWARRANTED INVASION OF PERSONAL PRIVACY

7.      FOIA Exemption 6 exempts from disclosure "personnel and medical files and

similar files the disclosure of which would constitute a clearly unwarranted invasion of personal

privacy." 5 U.S.C. § 552(b)(6). All information that applies to a particular person falls within

the scope of Exemption 6.

8.      FOIA Exemption 7(C) similarly exempts from disclosure "records or information

compiled for law enforcement purposes [when disclosure] could reasonably be expected to

constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).[3]

---

[3] The practice of the FBI is to assert Exemption 6 in conjunction with Exemption 7(C).
Although the balancing test for Exemption 6 uses a "would constitute a clearly unwarranted
invasion of personal privacy" standard and the test for Exemption 7(C) uses the lower standard
of "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the
analysis and balancing required by both exemptions are sufficiently similar to warrant a
consolidated discussion. The privacy interest is balanced against the public's interest in
disclosure under both exemptions.

9.      When withholding information pursuant to these two exemptions, the FBI is required to balance the privacy interest of the individual whose information is mentioned in the records against any public interest in disclosure.  In asserting these exemptions in its review of the records at issue, the FBI scrutinized the information to determine the nature and strength of the privacy interest of the individual whose identifying information appears in the records. When withholding information, the individual's privacy interest was balanced against the public's interest in disclosure.  For purposes of these exemptions, a public interest exists only when information about an individual, such as his or her name or other identifying information, would shed light on the FBI's operations and activities in the performance of its mission to protect and defend the United States against terrorist and foreign intelligence threats and uphold and enforce the criminal laws of the United States.  In each instance wherein information was withheld pursuant to Exemptions 6 and 7(C), the FBI determined that the individual's privacy interest outweighed any public interest in disclosure.

### (b)(6) AND (b)(7)(C): NAMES AND OTHER IDENTIFYING INFORMATION OF A THIRD PARTY WHO PROVIDED INFORMATION

10.     Pursuant to Exemptions (b)(6) and (b)(7)(C), the FBI protected the name and other identifying information of a third-party individual who provided information to the FBI during an FBI investigation.[4]  The identifying information of, and information provided by (outside of its investigative use), this third-party individual appears within the records that the FBI reviewed because this individual willingly divulged information relevant to the FBI's investigative efforts.  Plaintiff did not provide a privacy waiver from this third party authorizing

---

[4] Identifying information includes a name, date of birth, and Social Security number. This information was withheld on pages 1 and 13-59 of the April 18, 2022 response portion of DOJ CRM's supplemental release.

release of his or her information, nor did Plaintiff supply proof of death; therefore, this individual maintains substantial and legitimate privacy interests in not having their cooperation with or connection to the FBI disclosed. Considering that the FBI is an investigative and intelligence agency, disclosure of this individual's name or other identifying information in connection with FBI records carries an extremely negative connotation.

11. Disclosure of the identity of an individual who willingly provides information to the FBI could subject the third party to harassment or embarrassment, undue public attention, or unwanted inquiries for information related to his or her assistance. The individual could also be targeted for retaliation by investigative subjects or by those who simply disparage cooperation with law enforcement. Exposure of a third party's cooperation with law enforcement could also lead to economic detriment, negative professional and social repercussions, possible physical harm, or even death. Thus, the FBI has determined that this individual maintains substantial privacy interests in not having his or her identity disclosed.

12. In contrast, the FBI could identify no public interest in the disclosure of this information because disclosure of this individual's name or other identifying information would not significantly increase the public's understanding of the FBI's operations and activities. The FBI concluded that the non-existent public interest is insufficient to override this individual's substantial privacy interests; therefore, the FBI properly withheld the name and other identifying information of this individual pursuant to Exemptions 6 and 7(C). The FBI is also relying on Exemption 7(D) to protect this information in many instances.

NAME OF AN FBI SPECIAL AGENT

13.     Within Exemption category (b)(6) and (b)(7)(C), the FBI withheld the name of an FBI Special Agent (SA).[5] This FBI SA was responsible for conducting investigative activities relating to the FBI's sharing of criminal investigative information with DOJ CRM. These responsibilities included, but are not limited to, the following: coordinating and completing tasks in support of the FBI's investigative and administrative functions, and compiling information.

14.     Assignments of SAs to any particular investigation are not by choice. Publicity, adverse or otherwise, arising from a particular investigation, may seriously prejudice their effectiveness in conducting other investigations or performing other day-to-day work. The privacy consideration is also applied to protect FBI SAs, as individuals, from unnecessary, unofficial questioning as to the conduct of this or other investigations, whether or not they are currently employed by the FBI. FBI SAs conduct official inquiries into various criminal and national security violation cases. The publicity associated with the release of an SA's identity in connection with a particular investigation could trigger hostility toward a particular SA. During the course of an investigation, an SA may engage with all strata of society, conducting searches and making arrests, both of which result in reasonable but nonetheless serious disturbances to people and their lives. Persons targeted by such investigations, and those sympathetic to those targeted, could seek to inflict violence on an SA based on their participation in an investigation. This is because an individual targeted by such law enforcement actions may carry a grudge against those involved with the investigation, which may last for years. These individuals may seek revenge on SAs and other federal employees involved in a particular investigation. There is

---

[5] This information was withheld on page 2 of the April 18, 2022 response portion of DOJ CRM's supplemental release.

no public interest served by disclosing the SA's identity because their identity would not, itself, significantly increase the public's understanding of the FBI's operations and activities. Thus, disclosure of this information would constitute a clearly unwarranted invasion of the SA's personal privacy; and the FBI properly withheld the name of an FBI SA pursuant to Exemptions 6 and 7(C).

**EXEMPTION 7(D) – CONFIDENTIAL SOURCE INFORMATION**

15.     FOIA Exemption 7(D) protects "records or information compiled for law enforcement purposes" when disclosure could "reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of a record or information complied by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source." 5 U.S.C. § 552(b)(7)(D).

16.     Numerous confidential sources report to the FBI on a regular basis; they provide information under an express assurance of confidentiality and are "informants" within the common meaning of the term. Others are interviewed by the FBI or provide information to the FBI by other means under an implied assurance of confidentiality (*i.e.*, under circumstances from which an assurance of confidentiality can be inferred). In either situation, these sources are considered to be confidential because they furnish information only with the understanding that their identity and the information provided (outside of investigative use) will not be divulged outside the FBI. Information provided by these sources is often singular in nature and, if released, could reveal a source's identity. The FBI has learned through experience that sources must be free to furnish information to the FBI with complete candor and without the

8

understandable tendency to hedge or withhold information because of fear that their cooperation with the FBI will be disclosed. Sources providing information to the FBI should be secure in the knowledge that their assistance and their identity will be held in confidence.

17.    The release of a source's identity would forever eliminate that source as a future means of obtaining information. In addition, when the identity of one source is revealed, that revelation has a chilling effect on the activities and cooperation of other sources. Such a result undermines one of the FBI's most important means of collecting information and could thereby severely hamper law enforcement efforts to detect and apprehend individuals engaged in the violation of federal criminal laws.

(b)(7)(D): NAME AND OTHER IDENTIFYING INFORMATION OF, AND INFORMATION PROVIDED BY, AN INDIVIDUAL UNDER AN IMPLIED ASSURANCE OF CONFIDENTIALITY

18.    The FBI asserted Exemption (b)(7)(D) to protect the name and other identifying information of, and information provided by, a third party who provided information under an implied assurance of confidentiality, i.e., under circumstances in which confidentiality can be inferred.[6] This third party provided information concerning the activities of subjects of investigative interest to the FBI. Considering: (1) the singularity of the information provided and the likelihood that this individual could be identified by those familiar with the events described through release of the information; (2) the proximity of this individual to the investigative subjects and the events described; and (3) the nature of the criminal acts described, the FBI inferred that this individual provided information to the FBI solely because he or she believed his or her cooperation with the FBI, and the information he or she provided (outside of its investigative use), would remain confidential.

---

[6] This information was withheld on pages 1, 2 and 13-59 of the April 18, 2022 response portion of DOJ CRM's supplemental release.

19.     The FBI protected the name and other identifying information of, and information provided by, an individual who conveyed critical information to the FBI regarding an FBI criminal investigation. The information withheld by the FBI is in a DOJ CRM Covert Action Cover Sheet and Memorandum.[7] Additionally, the information provided by this individual and withheld by the FBI is in a third-party law enforcement report.[8] This individual was in a position to have ready access to and knowledge about an FBI criminal investigation, thus exposing him or her to potentially significant harm should their association and cooperation with the FBI be publicly disclosed.  One reason he or she risked harm when cooperating in the investigation described in the records at issue is that the individual was within the orbit of violent suspected criminals and such criminals (in the FBI's experience) typically seek to deter cooperation with law enforcement through reprisal.  Such reprisal can take many forms including, but not limited to, defamation of the source's character among peers and family; economic reprisal (deprivation of employment or business opportunities); violent threats aimed at instilling fear and doubt; and violence, such as physical harm, or murder. Considering these suspected criminals already displayed and were believed by the source to have a propensity toward violence, the source likely feared violent reprisal.  Even amidst these potential harms, the source provided specific, detailed information that is singular in nature – *i.e.*, only a few individuals would be privy to such information.  Thus, the FBI determined that disclosure of the identity of the source and the information provided (outside of investigative use) could subject him or her, as well as their family, to retaliation or backlash, should his or her information be disclosed.

---

[7] This information was withheld on page 1 and 2 of the April 18, 2022 response portion of DOJ CRM's supplemental release.

[8] This information was withheld on pages 13-59 of the April 18, 2022 response portion of DOJ CRM's supplemental release.

20.     Considering the circumstances described above, it is reasonable to infer that this individual cooperated with the FBI solely because he or she expected that their identity and the information provided (outside of its investigative use) would be held in confidence.  Therefore, the FBI properly withheld this information pursuant to Exemption 7(D).

## EXEMPTION (b)(7)(E) LAW ENFORCEMENT TECHNIQUES AND PROCEDURES

21.     FOIA Exemption 7(E) provides protection for law enforcement records or information, the production of which "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).

22.     Within the records at issue, the FBI asserted Exemption (b)(7)(E) to non-public investigative techniques and procedures utilized by the FBI to pursue its law enforcement function and to non-public details about techniques and procedures that are otherwise known to the public.  Specifically, the FBI asserted Exemption 7(E) to protect the following category of information.

### (b)(7)(E): TYPE AND DATES OF AN INVESTIGATION

23.     Pursuant to FOIA Exemption (b)(7)(E), the FBI protected information pertaining to the type and dates of the investigation referenced in the records at issue in this case.[9] Specifically, some of the information withheld, when referenced in connection with actual investigation and not in general discussion, pertains to the type of investigation, whether it is a "preliminary" or "full" investigation and the dates the FBI initiated the investigation. Disclosure

---

[9] This information was withheld on pages 1 and 13-59 of the April 18, 2022 response portion of DOJ CRM's supplemental release.

11

of this information would inform criminals the type of activities that would trigger a full investigation as opposed to a preliminary investigation, and the particular dates the investigation covers. Additionally, this information would also give criminals valuable insight into how the FBI develops its investigation. Release of this information would allow investigative subjects to predict FBI investigative strategies and adjust their behavior accordingly. Moreover, revealing a specific activity in general warrants investigation could likewise cause individuals to adjust their conduct to avoid investigative scrutiny by the FBI.

24.     Within this category, the FBI also protected the categorization of a sensitive FBI investigation. The specific type of investigation pursued to investigate certain matters is often highly sensitive. This is because internal FBI policies establish which types of investigative techniques are authorized for use in certain types of investigations. Thus, revealing how investigations are categorized by FBI personnel would reveal the investigative "toolbox" available to the FBI in certain situations. Releasing the investigation type would allow criminals to predict the FBI's responses and investigative strategies when pursuing certain types of criminal behavior/national security threats. Such a release would enable criminals to stay one step ahead of FBI investigators and enable them to circumvent the law. Furthermore, revealing this information would also show the types of criminal behavior and/or intelligence discovered by the FBI that predicated the initiation of the particular investigation type. This could potentially reveal to criminals and national security threats key information about the FBI's intelligence sources and methods, and/or the FBI's capabilities to gather evidence of potential criminal activities through various investigative techniques. Disclosure could thus reveal key information about the FBI's investigative capabilities, allowing criminals to educate themselves on how they might avoid detection and/or disruption of their activities by FBI investigators.

25.     In summary, disclosure of information related to the type and timing of the investigation could enable criminals to time and structure their illegal activities accordingly to circumvent the FBI's attempts to enforce federal laws; therefore, the FBI has properly withheld this information pursuant to Exemption 7(E).

## FORESEEABLE HARM STANDARD

26.     The FOIA Improvement Act of 2016 generally adopted the foreseeable harm standard and made it statutory, advising that agencies shall withhold information under the FOIA only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption or disclosure is prohibited by law. Accordingly, the FBI's analysis of records responsive under the FOIA is a two-part process. First, the FBI determines whether a record is exempt pursuant to one or more FOIA exemptions. Second, if the record is exempt pursuant to one or more FOIA exemptions, the FBI then considers whether foreseeable harm would result from disclosure of the record. For the withheld records at issue here, the FBI conducted this two-part analysis and only withheld records where it determined the withheld record met both of these criteria. The FBI's foreseeable harm is more fully described within each of the above coded exemption justification categories.

## SEGREGABILITY

27.     As discussed in ¶ 2, *supra*, DOJ CRM coordinated with the FBI to review additional pages which were not previously consulted to the FBI. The FBI released in part (RIP) two pages and withheld in full (WIF) 47 pages.  Each of these categories is discussed below to further address segregability.

a.  Pages RIP.  Following its segregability review, the FBI determined that two pages could be released in part with redactions per the identified FOIA exemptions cited

13

herein.  This page includes a mixture of information that could be segregated for release and withheld information as release would trigger foreseeable harm to one or more interests protected by the FOIA exemptions cited herein.

b.  Pages WIF.  Following its segregability review, the FBI determined that 47 pages require withholding in their entirety.  The FBI determined that all the information on these pages is either fully covered by one or more of the cited FOIA exemptions or determined that any non-exempt information on these pages is so intertwined with exempt information that no information could be reasonably segregated for release.  Any further segregation of the intertwined information would employ finite resources only to produce disjointed words, phrases, or sentences that, taken separately or together, would have minimal or no information content.

## CONCLUSION

28.    Following coordination with DOJ CRM, the FBI reviewed the 49 additional pages not initially provided to the FBI for consultation by DOJ CRM and released all reasonably segregable, non-exempt information pursuant to the FOIA. The FBI has properly denied access to the records pursuant to Privacy Act Exemption (j)(2). The FBI processed the records under the access provisions of the FOIA to achieve maximum disclosure. The FBI properly withheld information pursuant to FOIA Exemptions (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E).  The FBI carefully examined the records and determined that the information withheld from Plaintiff, if disclosed, would cause a clearly unwarranted invasion of the personal privacy, or could reasonably be expected to constitute an unwarranted invasion of personal privacy, could reasonably be expected to disclose the identities of confidential sources and the information they

14

provided, and could reasonably be expected to disclose law enforcement techniques and procedures.  After an extensive page by page, line by line, review of the records at issue, the FBI determined that there is no further non-exempt information that can be reasonably segregated and released without revealing exempt information.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this _____8th_____ day of February, 2024.

_____
MICHAEL G. SEIDEL
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia