**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DONATOS SARRAS**,<br><br>Plaintiff,<br><br>v.<br><br>**U.S. DEPARTMENT OF JUSTICE**,<br><br>Defendant. | Case No. 19-cv-0861 (CRC) |

**MEMORANDUM OPINION AND ORDER**

Federal inmate Donatos Sarras filed this *pro se* action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a, challenging the Department of Justice's ("DOJ") responses to two FOIA requests that he submitted in 2016 and 2018. In two prior decisions, the Court granted DOJ summary judgment as to the adequacy of DOJ's searches and certain withholdings. But the Court also found that it was impossible for it to assess other withholdings because three of DOJ's productions to Mr. Sarras lacked page numbers and DOJ's declarations contained severe unexplained discrepancies.

Having corrected the deficiencies identified by the Court, DOJ now moves for summary judgment for a third time. Sarras has also filed a cross-motion for summary judgment. For the reasons given below, the Court upholds almost all of DOJ's withholdings. The one exception is that it appears that DOJ may have withheld names that it publicly disclosed. The Court will therefore grant in part DOJ's motion, deny in part Sarras's cross-motion for summary judgment, and reserve ruling on one narrow issue pending further clarification from DOJ.

## I. Background

As this opinion is the Court's third in this case, the Court will keep its discussion of the relevant background brief.

In 2016, Sarras lodged the following FOIA request with the Office of Enforcement Operations, a unit within DOJ's Criminal Division:

> I am requesting that you provide me from the Office of Enforcement Operations (OEO) copies or print-outs of all non-duplicative: (1) documents in my file; and (2) other documents and written electronic communications including email threads referencing/containing my name sent "from" and "to" (including "carbon copies") the OEO.

Compl. Ex. 1A [ECF 1-2]. In 2018, Sarras made a similar request of the International Prison Transfer Unit, another unit within DOJ's Criminal Division. Id. Ex. 1B.

DOJ then produced records to Sarras, and the parties moved for summary judgment. See Op. & Order ("Sarras I") [ECF 44]. The Court denied Sarras's motion and granted DOJ's motion in part. Id. at 20. Specifically, the Court granted summary judgment to DOJ on the adequacy of its search in response to Sarras's 2018 request and on DOJ's withholdings under FOIA Exemptions 3, 6, and 7. Id. at 10–12, 13 n.11. The Court reserved judgment, however, on the adequacy of the search conducted in response to Sarras's 2016 request because the government's declarations did not state that "all locations likely to contain responsive materials were searched." Id. at 9 (cleaned up). The Court also reserved judgment as to whether OEO had properly withheld a Department of State record and documents related to the processing of Sarras's FOIA requests. Id. at 12–18.

DOJ then conducted additional searches and found 5,750 potentially responsive pages. Mem. Op. & Order ("Sarras II") at 5 [ECF 87]. DOJ reviewed these pages and produced 900 responsive pages in four batches: 100 in December 2021, 693 in February 2022, 92 in April 2022, and 15 in December 2022. Decl. of Miranda Butler ("Butler Decl.") ¶¶ 10–12.

Following these supplemental productions, the parties moved again for summary judgment. See Sarras II. The Court granted DOJ's motion in part and denied Sarras's motion in

part. Id. at 28. The Court held that DOJ's search in response to the 2016 request was adequate. Id. at 13. The Court also held that DOJ had properly withheld certain documents under Exemptions 5 and 6 and the names and identifying information of lower-level employees. Id. at 14–22.

The Court also reserved ruling on several of DOJ's claimed exemptions "[b]ecause of defects and inconsistencies in the government's productions, affidavits, and indexes[.]" Sarras II at 22. Specifically, the Court explained that because three of DOJ's supplemental productions did not have any page numbers, there was no way for the Court to match pages and redactions with entries in DOJ's Vaughn index. Id. at 23. Furthermore, while DOJ claimed that some of the documents in the February 2022 release were duplicates of those released in DOJ's initial production, the stated number of duplicated pages varied across filings and did not add up. Id. at 24–25. Finally, DOJ claimed that the FBI had reviewed dozens of pages from the April 2022 production, while the FBI claimed it had reviewed just ten. Id. at 26.

In light of these problems, the Court instructed DOJ to paginate the productions and to file a corrected Vaughn index and declarations addressing the discrepancies between DOJ's various filings. Id. at 28. DOJ did so, and the parties have now moved again for summary judgment. See DOJ Third Mot. Summ. J. [ECF 93]; Sarras Cross-Mot. Summ. J. ("Sarras Opp'n") [ECF 98]. Their motions are ripe for review.

## II. Legal Standard

"Summary judgment is the typical and appropriate vehicle to resolve FOIA disputes." Citizens for Resp. & Ethics in Wash. v. Dep't of Homeland Sec., 525 F. Supp. 3d 181, 187 (D.D.C. 2021) (Cooper, J.). When reviewing a motion for summary judgment under FOIA, "the underlying facts and the inferences to be drawn from them are construed in the light most

favorable to the FOIA requester," and summary judgment is appropriate only after "the agency proves that it has fully discharged its FOIA obligations." White Coat Waste Project v. Dep't of Veterans Affs., 404 F. Supp. 3d 87, 95 (D.D.C. 2019) (cleaned up). "[T]he burden of proof is always on the agency to demonstrate that it has fully discharged its obligations under the FOIA." McKinley v. FDIC, 756 F. Supp. 2d 105, 111 (D.D.C. 2010).

To obtain summary judgment on its invocation of a FOIA exemption, the agency must first show that the material falls under an enumerated exemption. See Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009). Agencies can do so by providing sufficiently detailed declarations. Id. "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." Jud. Watch, Inc. v. DOJ, 715 F.3d 937, 941 (D.C. Cir. 2013) (quotation marks omitted). Because the primary purpose of FOIA is disclosure, exemptions are construed narrowly. DiBacco v. U.S. Army, 795 F.3d 178, 183 (D.C. Cir. 2015).

Next, the agency must make a "focused and concrete" showing that disclosing the withheld records would foreseeably cause harm. Reps. Comm. for Freedom of the Press v. FBI, 3 F.4th 350, 370 (D.C. Cir. 2021); 5 U.S.C. § 552(a)(8)(A)(i)(I).

Finally, the agency must demonstrate that it has produced "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt[.]" 5 U.S.C. § 552(b). Agencies must explain why non-exempt material is not reasonably segregable, and "are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1117 (D.C. Cir. 2007).

## III. Analysis

As a threshold matter, Sarras claims that DOJ's latest Vaughn index is inadequate because it fails to account for the pages that DOJ deemed nonresponsive. See Sarras Opp'n at 2–

3. But a Vaughn index is only a means for the government to explain why a responsive record falls under one of FOIA's exemptions; the government does not have to explain in it why it deemed records nonresponsive. See Vaughn v. Rosen, 484 F.2d 820, 828 (D.C. Cir. 1973). Moreover, DOJ adequately explained elsewhere how it sifted through the initial set of 5,750 pages. Personnel from its FOIA unit "reviewed all 5,750 pages . . . and processed all portions . . . that pertained to the Plaintiff." First Decl. of Traci McCoy ("First McCoy Decl.") ¶ 31 [ECF 72-1]. From there, staff identified records that "did not reference Plaintiff, but instead referenced other FOIA requesters and the processing of those requests" and "excluded and marked these portions as non-responsive." Id. DOJ's explanation of how it identified responsive records is entitled to a presumption of good faith, and Sarras gives no reason to disturb that presumption. See SafeCard Servs. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991). To the extent that Sarras is challenging the adequacy of DOJ's search for responsive records, the Court has already granted DOJ summary judgment on that issue as to both of his requests. Sarras I at 10–12 (2018 request); Sarras II at 13 (2016 request).

With the Vaughn index issue resolved, the Court turns next to whether DOJ properly withheld records from its supplemental productions. Three of those productions are in dispute: the December 2021, February 2022, and April 2022 productions. Now that DOJ has paginated those productions and supplied an updated Vaughn index and agency declarations, the Court determines that, for the most part, DOJ properly withheld records and information from those productions. The Court nevertheless reserves judgment as to one narrow issue.

A. The December 2021 production

DOJ's withholdings from the December 2021 production are all under Exemption 6, which shields "personnel and medical files and similar files the disclosure of which would

constitute a clearly unwarranted invasion of personal privacy[.]" 5 U.S.C. § 552(b)(6). DOJ's Vaughn index indicates that DOJ applied Exemption 6 to withhold three types of information: (1) names of other FOIA requesters; (2) names of third parties; and (3) email addresses of government employees. DOJ Third Mot. Summ. J. Ex. A ("Corrected Vaughn Index") at 1–4. The Court finds that, for the most part, these withholdings are proper.

To begin, as this Court has explained previously, names are covered by Exemption 6. See Sarras II at 21–22; Jud. Watch, Inc. v. FDA, 449 F.3d 141, 152 (Exemption 6 covers "bits of personal information, such as names and addresses[.]"). The same goes for email addresses. See Hall & Associates v. EPA, No. 19-cv-1095 (RC), 2020 WL 4673411, at *3 (D.D.C. Aug. 12, 2020) (collecting authorities).

The Court finds that the balance of public and privacy interests supports DOJ's withholding of these names and email addresses. Courts have long recognized that individuals have more than minimal privacy interests in their names and other identifying information. See Niskanen Ctr. v. FERC, 20 F.4th 787, 791–92 (D.C. Cir. 2021). That includes government employees' email addresses, as disclosing them could lead to harassment. See Sarras II at 21–22; Nova Oculus Partners, LLC v. SEC, 486 F. Supp. 3d 280, 290 (D.D.C. 2020) (agency properly invoked Exemption 6 to withhold staff email addresses). On the other side of the balance, Sarras identifies no public interest in disclosing the withheld information. Nor would disclosing the names of third parties and other FOIA requesters or the email addresses of lower-level government employees promote the public's interest in learning what the government is doing. See Nova Oculus, 486 F. Supp. 3d at 290. As such, the balance of public and private interests tips against disclosure.

Disclosing these names and email addresses would also foreseeably cause harm. "[T]he release[] of the Federal government employees' names and contact information would result in harassment, impacting their ability to effectively complete their day-to-day duties." First McCoy Decl. ¶ 65.

For the most part, Sarras does not dispute the above. The Court understands Sarras to be arguing that, because information is missing from certain pages, he cannot verify that the pages that were produced to him are the pages described in DOJ's corrected Vaughn index. See Sarras Opp'n at 3–4. While the Court previously agreed that it was impossible to match produced pages with the Vaughn index, that was when DOJ's productions lacked page numbers. The pages are now numbered, and Sarras has offered no reason to suspect that the pagination does not line up with DOJ's corrected Vaughn index, or that DOJ has mischaracterized the documents in its corrected Vaughn index. Accordingly, Sarras has the information he needs to contest DOJ's claimed exemptions for each page. DOJ is not required to provide more. See Vaughn, 484 F.2d at 828 (government must provide enough detail to permit "more adequate adversary testing").

That said, the Court finds that it once again must reserve judgment on an issue. Sarras contests DOJ's redactions on pages 14 and 15 of the December 2021 production, which both Sarras and DOJ describe as an email exchange between government employees. Corrected Vaughn Index at 2; Sarras Opp'n at 4. Sarras claims, and DOJ does not dispute, that the emails' recipients' names are missing from those pages. Sarras Opp'n at 4. Sarras argues that the names have been improperly redacted. Id.

For the reasons given above, the Court would be inclined to grant DOJ summary judgment on this issue. But DOJ disclosed the names of the employees on this particular email

exchange in its publicly filed Vaughn index. See Corrected Vaughn Index at 2 (describing the email as being from "Johnson" to "Jones" and "Mathewson-Harris"); id. at cover page (specifying that Johnson is Lashawn Johnson, Jones is Amanda Jones, and Mathewson-Harris is Margaret Mathewson-Harris). DOJ's prior Vaughn index also disclosed these names. See First DOJ Second Mot. Summ. J. Ex. E at cover page, 1–3 [ECF 72-3]. By disclosing the employees' names in two public filings, DOJ has waived its right to withhold these names from the challenged email records. Amiri v. Nat'l Sci. Found., 664 F. Supp. 3d 1, 16 (D.D.C. 2021) ("[A]n agency cannot assert a FOIA exemption for information that the agency has officially disclosed to the public[.]" (citing Davis v. DOJ, 968 F.2d 1276, 1279 (D.C. Cir. 1992))).

There is one more stumbling block. The Court does not know whether Johnson, Jones, and Mathewson-Harris's names appear on the unredacted version of the emails. DOJ acknowledges in its Vaughn Index that it redacted staff email addresses from those pages, but it does not specify whether it redacted any names. Corrected Vaughn Index at 2. That omission suggests that DOJ did not redact names, and DOJ is entitled to a presumption of good faith. See Eddington v. U.S. Dep't of Def., 35 F.4th 833, 837 (D.C. Cir. 2022).

On the other hand, DOJ's reply brief does not meaningfully respond to Sarras's assertion that DOJ redacted names from those pages. See DOJ Reply Supp. Third Mot. Summ. J. at 3 [ECF 101]. DOJ instead cursorily asserts that "[a] requester may not rebut agency affidavits with purely speculative allegations." Id. True, but it is hardly speculative to think that where there are email addresses, there are names, especially on internal email correspondence between coworkers. Furthermore, other emails produced to Sarras included names in the recipient fields. See, e.g., Sarras Second Cross-Mot. Summ. J. Ex. SJ2.1 at 12, 13, 19 [ECF 77-1] (emails listing "Jones, Amanda (CRM)" in recipient fields).

In light of the above, the Court finds that it must reserve ruling on the parties' motions as to pages 14 and 15 of the December 2021 production. To grant either party summary judgment, the Court must view all facts and draw all inferences in the light most favorable to the other. Chambers v. Dep't of Interior, 568 F.3d 998, 1003 (D.C. Cir. 2009). And on this record, the Court does not know whether DOJ redacted Johnson, Jones, or Mathewson-Harris's names from the email at pages 14 and 15.

The Court therefore instructs counsel for DOJ to file, within seven days of this opinion's issuance, a notice indicating whether DOJ redacted the names of Lashawn Johnson, Amanda Jones, and Margaret Mathewson-Harris from those pages. If it did so, then the Court will grant summary judgment to Sarras and deny summary judgment to DOJ on this issue. If it did not, then the Court will do the reverse.

B. The February 2022 production

DOJ's February 2022 production contains 693 pages, of which 525 are duplicates of pages that DOJ previously produced in November 2019. Butler Decl. ¶¶ 18–20. Sarras's lone challenge to the February 2022 production is that DOJ has failed to establish that certain pages are duplicates of previously produced pages. Sarras Opp'n at 4–5. He raises no objection as to the pages that are not duplicates. See id.

The Court finds that DOJ has adequately identified the duplicate pages. In a prior order, the Court granted summary judgment to DOJ as to the November 2019 withholdings. Sarras I at 13 & n.11. The Court also previously explained that it would grant summary judgment as to all pages in the February 2022 production that are duplicates of pages released in the November 2019 production. Sarras II at 23 n.14. DOJ has now paginated the February 2022 production and identified the duplicates. Corrected Vaughn Index at 4–18. The agency also filed a detailed

declaration identifying the duplicated pages. See Butler Decl. ¶¶ 20–24. DOJ's representations are entitled to a presumption of good faith. See Eddington, 35 F.4th at 837. Sarras has not offered any reason to think that DOJ misidentified those pages.

The Court therefore grants DOJ summary judgment as to the February 2022 production.

C. The April 2022 production

The April 2022 production consists of 68 pages, of which 59 were reviewed by the FBI because they contain information compiled by the FBI. Butler Decl. ¶ 23; Second Seidel Decl. ¶ 2 & nn.1–2.

Sarras raises four challenges to DOJ's withholdings from the April 2022 production. Sarras Opp'n at 5–11. First, he claims that DOJ improperly redacted portions of a "covert cover sheet." Id. at 6–8. Second, he challenges DOJ's withholding of attorneys' names under Exemptions 6 and 7(C). Id. at 9. Third, he argues that DOJ improperly withheld dates from the records. Id. at 10. Fourth, he claims that DOJ improperly withheld what DOJ identifies as a "third-party law enforcement" record. Id. at 11. The Court rejects each argument in turn and grants DOJ summary judgment as to the April 2022 production.

*1. The "covert cover sheet"*

The "covert cover sheet" documents a request by the FBI to the Special Operations Unit to use a wire while investigating Sarras. Sarras II at 16. FBI later withdrew the request before the Special Operations Unit acted on it. Id.

The Court previously granted summary judgment to DOJ as to this document, holding that DOJ properly withheld it under Exemption 5. Sarras II at 16–17. The Court explained that the document was predecisional and reflected the government's internal deliberative processes.

Id. Sarras attempts to relitigate this determination, and the Court rejects his arguments for the reasons given in Sarras II.

*2. Attorney names*

The Court holds that DOJ properly redacted attorneys' names for the same reasons that it found DOJ properly withheld personal identifying information from the December 2021 production. The attorneys named in the April 2022 production have privacy interests in their names and there is no public interest that supports disclosure. See Nova Oculus, 486 F. Supp. 3d at 290. Disclosure would also foreseeably cause harm, as disclosing the attorneys' names would expose them to unwarranted harassment. See First McCoy Decl. ¶ 65.

Sarras's allegations of attorney misconduct do not move the needle. Sarras argues that DOJ's redactions of attorney names are improper because he needs those names to pursue disciplinary proceedings against those attorneys before their state bar associations. See Sarras Opp'n at 9. Requesters may obtain private information under FOIA such as individuals' names if they "produce evidence that would warrant a belief by a reasonable person that [an] alleged Government impropriety might have occurred." Blackwell v. FBI, 646 F.3d 37, 41 (D.C. Cir. 2011) (quoting Nat'l Archives & Recs. Admin. v. Favish, 541 U.S. 157, 174 (2004)). But Sarras has not produced any evidence of misconduct, and therefore has not met "the demanding Favish standard." Id. at 41.

*3. Dates*

Next, the Court also holds that DOJ properly withheld dates from the April 2022 production at the FBI's request under Exemption 7(E). That exemption shields information that, if disclosed, would reveal "techniques and procedures for law enforcement investigations or prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of the

law[.]" 5 U.S.C. § 552(b)(7)(E). The FBI must "demonstrate logically how the release of the requested information might create a risk of circumvention of the law." Blackwell, 646 F.3d at 42 (quotation marks omitted).

The FBI has met its burden here. [redacted][1]

*4. Third-party law enforcement record*

Finally, the Court holds that DOJ properly withheld the third-party law enforcement record in full. DOJ explains that the document contains "the name and other identifying information of a third-party individual who provided information to the FBI during an FBI investigation." Second Decl. of Michael G. Seidel ("Second Seidel Decl.") ¶ 10 [ECF 93-3]. The document also includes information provided by the third party to the FBI "concerning the activities of subjects of investigative interest to the FBI." Id. ¶ 18. DOJ redacted the third

[1] The Court has redacted this portion of the opinion because it is based on a sealed, *ex parte* declaration filed by DOJ. See Minute Order of July 2, 2024 (granting DOJ's motion for leave to file an *ex parte* and *in camera* declaration). These materials must remain sealed because they contain sensitive, previously undisclosed law-enforcement information. See United States v. Hubbard, 650 F.2d 293, 317–22 (D.C. Cir. 1980); In re L.A. Times Commc'ns, LLC, 628 F. Supp. 3d 55, 65–67 (D.D.C. 2022) (applying Hubbard to seal law-enforcement information).

party's identifying information under Exemptions 6 and 7(C), and the information shared by the third party under Exemption 7(D). Id. ¶¶ 10, 18.[2]

As a threshold matter, the Court holds that the withheld record was compiled for law-enforcement purposes. Exemptions 7(C) and 7(D) both apply only to "records or information compiled for law enforcement purposes[.]" 5 U.S.C. § 552(b)(7). A record is so compiled if it "relate[s] to anything that can fairly be characterized as an enforcement proceeding[.]" Bartko v. DOJ, 898 F.3d 51, 64 (D.C. Cir. 2018). Because the record at issue is a report made during and regarding an FBI investigation, it clearly relates to an enforcement proceeding.

The Court turns next to DOJ's claimed exemptions, beginning with Exemptions 6 and 7(C) before addressing Exemption 7(D).

a. Exemptions 6 and 7(C)

Exemptions 6 and 7(C) both shield private information if the public interests in disclosure do not outweigh the privacy interests at stake. See Reed v. NLRB, 927 F.2d 1249, 1251 (D.C. Cir. 1991); Jud. Watch, Inc. v. DOJ, 394 F. Supp. 3d 111, 116–17 (D.D.C. 2019). Exemption 6 shields all types of government records if disclosure "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) shields law-enforcement records if disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." Id. § 552(b)(7)(C).

---

[2] Sarras appears to concede that DOJ's withholding of this record was proper, at least in part. His reply brief concedes that "further information about the individuals engaged in and those affected by" the third party's cooperation with the government "is not necessary to become public." Sarras Reply Supp. Third Cross-Mot. Summ. J. at 2 [ECF 104]. The Court, however, is not certain whether Sarras has conceded that the entire record, including the information provided by the third party, may be withheld, or that only the parts of it pertaining to the individuals involved may be withheld. So, the Court will address the merits of DOJ's withholding of the record in full.

The Court finds DOJ properly redacted the name and identifying information of the third party. "[T]o the extent any information contained in 7(C) investigatory files would reveal the identities of . . . witnesses[] or informants in law enforcement investigations, those portions of responsive records are categorically exempt from disclosure[.]" Nation Mag. v. U.S. Customs Serv., 71 F.3d 885, 896 (D.C. Cir. 1995); see Petrucelli v. DOJ, 51 F. Supp. 3d 142, 167–68 (D.D.C. 2014). The Court sees no reason to deviate from that general rule in this case. The third party named in this record provided information against suspected criminals who may retaliate against the individual if they learn of the individual's cooperation. See Second Seidel Decl. ¶¶ 10–11. On the other hand, revealing an informant's personal identifying information would not further the public's understanding of the FBI's activities. Disclosure would therefore be a clearly unwarranted invasion of personal privacy.

b. Exemption 7(D)

Exemption 7(D) shields law-enforcement records that, if disclosed, "could reasonably be expected to disclose the identity of a confidential source . . . [who] furnished information on a confidential basis[.]" 5 U.S.C. § 552(b)(7)(D). DOJ asserts that disclosing what the informant told the FBI could reasonably be expected to disclose the source's identity.

The Court agrees. As DOJ explained, disclosing the information provided by the third party could reasonably be expected to reveal the third party's identity. The third party provided "specific, detailed information that is singular in nature" and that "only a few individuals would be privy to[.]" Second Seidel Decl. ¶ 19. The third party obtained this information through his or her "proximity . . . to the investigative subjects and the events described[.]" Id. ¶ 18. As a result, it appears that individuals under investigation by the FBI could deduce the third party's identity should the third party's information be disclosed.

DOJ has also demonstrated that the informant provided the information on a confidential basis. "A source is confidential within the meaning of exemption 7(D) if the source provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." Williams v. FBI, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (quotation marks omitted). To determine whether such an assurance can be reasonably inferred, courts consider factors such as "the character of the crime at issue" and "the source's relation to the crime[.]" DOJ v. Landano, 508 U.S. 165, 179 (1993).

Here, DOJ does not assert that it provided any express assurances to the third-party informant. But it has demonstrated that the third party provided information under circumstances that reasonably imply such an assurance. The informant provided information regarding "violent suspected criminals" who had "already displayed and were believed by the source to have a propensity toward violence[.]" Second Seidel Decl. ¶ 19. And, as previously mentioned, the informant was in "proximity . . . to the investigative subjects and the events described[.]" Id. ¶ 18. Accordingly, the source had reason to fear violent reprisal and likely cooperated with the FBI only because the source believed that the information and the source's identity would be kept confidential. Id. ¶ 19.

c. Sarras's objections

Sarras does not dispute the balance of public and private interests, or that the informant cooperated under an implied assurance of confidentiality. Instead, he appears to argue that DOJ has not adequately identified the third-party law enforcement record. See Sarras Opp'n at 11. But DOJ identified the document by page number, described its contents, and explained why it was withheld. See Vaughn, 484 F.2d at 827 (requiring the government to "formulat[e] a system of itemizing and indexing that would correlate statements made in the Government's refusal

justification with the actual portions of the document"). Sarras also gives no reason to think that DOJ's representations are inaccurate. The Court therefore will not require DOJ to do more.

Sarras also faults DOJ for withholding the record in full when DOJ withheld other related pages only in part. See Sarras Opp'n at 11. There is, however, an easy explanation for this purported discrepancy: the pages released in part contain non-exempt information, while the third-party record does not. See Second Seidel Decl. ¶ 27.

D. Segregability

Finally, the Court concludes that DOJ met its obligation of producing all reasonably segregable information. See 5 U.S.C. § 552(b). "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be overcome by some "quantum of evidence" by the requester. Sussman, 494 F.3d at 1117. Here, DOJ explains that it reviewed each page in the production "line-by-line" and released "all non-exempt information." First McCoy Decl. ¶ 67. For documents withheld in full, DOJ continues that "either there was no reasonably segregable information, any non-exempt information amounted to essentially meaningless words or phrases, or the information fell within information protected by another exemption[.]" Id. The FBI similarly made "[e]very effort . . . to provide Plaintiff . . . with all reasonably segregable, non-exempt information." Second Seidel Decl. ¶ 5. Sarras, on the other hand, has produced no evidence to rebut the presumption that the government produced all reasonably segregable information.

## IV. Conclusion

For the foregoing reasons, it is hereby

**ORDERED** that [93] Defendant's Motion for Summary Judgment is **GRANTED** in part;

**ORDERED** that [98] Plaintiff's Cross-Motion for Summary Judgment is **DENIED** in part;

**ORDERED** that Defendant shall file by September 25, 2024, a notice indicating whether it redacted the names of Lashawn Johnson, Amanda Jones, and Margaret Mathewson-Harris from pages 14 and 15 of the December 2021 production.

**SO ORDERED.**

CHRISTOPHER R. COOPER
United States District Judge

Date: September 18, 2024